KANN et al. v. DIAMOND STEEL CO. et al.[1]

(Circuit Court of Appeals, Eighth Circuit.    October 17, 1898.)

No. 1,065.

1. TRADE-MARKS—SUIT FOR INFRINGEMENT—GROUNDS.

The sole basis for a suit for the infringement or imitation of a trade-mark is the sale, or probable sale, of the goods of one manufacturer for those of another; and, to entitle a complainant to relief in equity, it must appear, from a comparison of the two marks or brands used, that the similarity is such as will apparently be likely to deceive an ordinary purchaser, or it must be shown that purchasers have actually been deceived.[2]

2. SAME—EVIDENCE CONSIDERED.

Complainants made and sold an abradant composed of particles or granules of steel, used for polishing, under the name of "Crushed Steel" or "Steel Emery." A conventional figure of a diamond shape, or lozenge, was used as a trade-mark on the packages. After complainants' product

---

[1] Rehearing pending.

[2] As to fraudulent intent and extent of resemblance, as grounds for trade-mark infringement suits, see sections 6 and 7 of note to Scheuer v. Muller, 20 C. C. A. 178, and sections 3 and 4 of supplementary note to Lare v. Harper, 30 C. C. A. 381.

had been in the market for five years, during which time the word "Diamond" had never been associated with it in the trade, defendants began selling a similar article, made in Germany, under the name of "Diamond Steel," using a picture of a radiant diamond as a trade-mark upon the packages. *Held*, that the similarity between the symbols and names was not such as to warrant an injunction against defendant, in the absence of evidence that any purchaser had been deceived thereby.

3. SAME—INTENTION TO DECEIVE.

The intention on the part of an alleged infringer to deceive purchasers by the use of the simulated trade-mark furnishes no ground for relief, unless the similarity between the two marks is of a character to accomplish such purpose.[2]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

This is a suit in equity by Myer M. Kann and others, partners under the name of the Pittsburgh Crushed-Steel Company, Limited, against the Diamond Steel Company, to restrain the defendants from imitating complainants' trade-mark. From a decree dismissing the suit, complainants appeal.

Hugh K. Wagner and Paul Bakewell, for appellants.

James A. Seddon (James L. Blair, on brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge.    This is an appeal from a decree which dismissed a suit in equity that had been brought to restrain the appellees from imitating the trade-mark of the appellant, and from selling their goods marked with that trade-mark or any simulation of it. Every suit of this character is founded on the fact that the action, or the proposed action, of the defendant has deceived, or is calculated to deceive, ordinary purchasers buying with usual care, so that they have purchased, or will probably purchase, the goods of the defendant under the mistaken belief that they are those of the complainant, to the serious damage of the latter.    The deceit, or probable deceit, of the ordinary purchaser to such an extent that he buys, or will probably buy, the property of one manufacturer or vendor, in the belief that they are those of another, is a sine qua non of the maintenance of such a suit, because every one has the undoubted right to sell his own goods, or goods of his own manufacture, as such, however much such sales may diminish or injure the business of his competitors.    Mr. Justice Duer, in the leading case of Manufacturing Co. v. Spear, well stated this rule in these words:  "At present, it is sufficient to say that, in all cases where a trade-mark is imitated, the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and it is only when this false representation is directly or indirectly made, and only to the extent to which it is made, that the party who appeals to the justice of the court can have a title to relief." Manufacturing Co. v. Spear, 2 Sandf. 599, 606; Canal Co. v. Clark, 13 Wall. 311, 322; Gorham Co. v. White, 14 Wall. 511, 528; McLean v. Fleming, 96 U. S. 245, 255, 256; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869, 876.

---

[2] See foot-note 2 on opposite page.

Recognizing this principle, the bill in this case charged that the appellees commenced selling an abrasive material made from crushed steel by others than the appellant, with the name and picture of a diamond upon the packages containing it, and with the word "Diamond" in the name of their company, after the appellant had manufactured and sold such an abradant with the symbol of a diamond branded upon its packages for so long a time that its product had become known to the trade as "Diamond Steel Abrasive," "Diamond Crushed Steel," and "Diamond Steel," and that, by this means, the appellees had deceived, and were likely to deceive, purchasers so that they would buy their abradant as that of the appellant. The answer denied this charge, and the proof established these facts: The appellant Pittsburgh Crushed-Steel Company, Limited, was a limited partnership, engaged in business in Pittsburgh, in the state of Pennsylvania. In 1889 it commenced to manufacture and sell an abradant made of fractured particles or granules of steel to be used in polishing and sawing stone and other substances of that character. It placed upon the packages which contained its product the symbol ◇, and the name "Crushed Steel" or "Steel Emery," and it sold large quantities of this material under these names in each year from 1889 until the commencement of this suit, in 1895. The appellant's product was ordered by its customers and known to the trade as "Crushed Steel" and "Steel Emery," and not as diamond steel or diamond emery. Some time in 1894 one Robert J. Marx formed a partnership with his sister and a man named Bausch under the name of "Diamantstahl-Werk B. Bausch & Co.," and commenced to manufacture a similar abradant from a like material at Altchemnitz, in Saxony, Germany. In the same year Robert J. Marx commenced to sell this abrasive material in the United States under the name of Jacob Marx & Co., of London, England. In the latter part of that year the appellees, Edwin H. Sublett, Benjamin F. Marx, and Edmund J. Marx, formed the Diamond Steel Company, a co-partnership, and, under that name, began to sell this German product at St. Louis, Mo. In June, 1895, they organized the appellee the Diamond Steel Company, a corporation, which has since continued to sell this foreign product in the United States. The packages containing this German abradant were marked with the words "Diamantstahl-Werk Altchemnitz," and the picture of a radiant diamond. There is no perceptible difference in the value of the abrasive material made by the appellant and that made by B. Bausch & Co. and sold by the appellees. They are both made of fractured particles of steel, and are both sold and used for similar purposes. On April 23, 1895, the appellant registered its symbol of a conventional diamond as its trade-mark, and on July 30, 1895, the Diamantstahl-Werk registered the picture of a radiant diamond as its trade-mark. Robert J. Marx and the appellees knew the product of the appellant, and the symbol and words which marked the packages that contained it, before they commenced to sell the German product in the United States. With this knowledge, and with the intent to compete with the appellant for the trade in this abradant in this country, Robert J. Marx adopted the trade-mark of a radiant diamond, and the name "Diamantstahl-Werk," and the appellees

formed the partnership and the corporation Diamond Steel Company, but the appellees and their salesmen generally offered the German product for sale at higher prices than those fixed by the appellant for its manufacture, and they claimed that it was superior to the American product. There is no evidence in the record that any purchaser was ever actually deceived so that he purchased the German product in the belief that it was the abradant made by the appellant. The words and symbols upon the various packages of these abradants sold by the appellant and the appellees, respectively, necessarily varied to some extent with the size and shape of the packages, but these are fair samples of those used in the trade by the parties to this suit:

There are other facts established by the proof, but none that are so material that they can affect the conclusions which those we have recited compel. In this state of the case the court below found that the appellees had not deceived by the use of the dress in which the German product was clothed, and probably would not deceive ordinary purchasers, so that they would buy that product under the belief that it was the article manufactured by the appellant, and accordingly dismissed its bill. Can any other inference be justly drawn from these facts?

The burden was on the appellant to show that the use of the symbol and words which marked the German product were calculated to deceive ordinary purchasers and to create confusion in the trade. It was open to it to do this by evidence that the use had actually done so, or by the ocular demonstration of a comparison of the symbols and words which marked the packages in which the two products were offered for sale. It produced no proof of actual deception, and thus left the question whether or not the dress in which the German product is clothed is calculated to deceive the ordinary purchaser to the arbitrament of the eyes. When they are turned upon the two trade-marks, either simultaneously or successively, the general impression is one of difference and dissimilarity. It is true that the one bears a diamond-shaped figure, and the other a picture of a radiant diamond, but, to the eyes, these present little likeness. It is not by the visual perception, but only through the mental suggestion, that both pictures . represent a diamond, and that things which are equal to another are equal to each other, that the hint of likeness is reached, and this is the only suggestion of similarity the two trade-marks contain. It is at least doubtful whether the thought that the two devices represent a diamond, and that, therefore, they must represent the product of the same manufacturer, would ever occur to the ordinary purchaser in the busy marts of trade. He probably recognizes the goods he seeks to buy by the visual impression of the device upon the product, rather than by the name of the thing whose picture is impressed. The pregnant fact that the appellant sold its goods marked with its diamond-shaped figure for more than five years before the German product was introduced, and yet neither the appellant nor any of its customers called it "Diamond Steel," or used the word "Diamond" in connection with its sale, lends strong support to this probability. However this may be, when all the words and symbols used by these litigants upon their respective packages as they are actually offered for sale to the trade are considered, all possibility of their confusion, or of the mistake of the one for the other, seems to disappear. The name of the product, the name of its manufacturer, and the place of its manufacture are certainly three of the most distinctive characteristics by which one article of commerce may be distinguished from another. All these are printed upon the packages of this product around the respective symbols of these competitors. The name of the material branded upon appellant's packages is either "Crushed Steel," or "Steel Emery"; on the appellees' it is "Diamond Steel." The name of the manufacturer printed on the appellant's packages is "Pittsburgh Crushed-Steel Company, Limited," and on

the appellees' it is "Diamantstahl-Werk"; and the place of manufacture printed on the appellant's packages is "Pittsburgh, Pa., U. S. A., while on the appellees' it is "Altchemnitz." When it is considered that these differences of symbols, of names of the articles, of names of the manufacturers, and of the places of manufacture all appear on the face of the respective packages as they are offered for sale, and that they are all emphasized by the use of different letters and a different arrangement of words, while the only hint of similarity is the fact that a diamond-shaped figure and the picture of a radiant diamond may both be called a diamond, the logical inference confirms the ocular demonstration which the sight of the two trade-marks makes, and leads irresistibly to the conclusion that the dress in which the German product is clothed is not calculated to give a false impression to the public, or to deceive any purchaser who exercises any degree of care in the selection of his goods.

Counsel for appellant seek to escape from this conclusion by a very ingenious and persuasive argument. They insist that the fact that the appellant used its symbol of a diamond as its trade-mark for five years before the appellees began to sell the German product in this country entitles it to restrain every one from selling a like abradant under any representation of a diamond, either by word or symbol. In support of this contention they cite Seixo v. Provezende, 1 Ch. App. 192; Read v. Richardson, 45 Law T. (N. S.) 54; Johnson v. Bauer, 27 C. C. A. 374, 82 Fed. 662; and Envelope Co. v. Walton, 82 Fed. 469. But the question whether or not others may use as a trade-mark a word or symbol that may be called by the same name as a symbol used by a complainant depends entirely upon the answer which the facts of the case give to the basic question whether or not the use of such a word or symbol is calculated to induce ordinary purchasers to buy the article offered under it, in the belief that it is the article made or sold by the complainant. Here, as elsewhere, in cases of this nature, relief may be granted if the acts or proposed acts of the alleged infringer are calculated to mislead the public, to deceive the purchasers, and to defraud the complainant, and, if they are not, it must be withheld. Deception, or probable deception, is still the test of the right to relief. Each of the cases cited by the appellant rests upon the proposition that the manufacturer or vendor, by the continued use of the picture or symbol upon an article offered for sale, had made it known to the trade by the name of the thing pictured or symbolized, so that any one who subsequently used the name of, or any symbol of, that thing upon a like article, would almost necessarily deceive the public, and defraud the manufacturer or vendor. In the leading case of Seixo v. Provezende, 1 Ch. App. 192, the principle upon which these cases stand was stated in these words: "If the goods of a manufacturer have, from the mark or device he has used, become known by any particular name, I think that the adoption by a rival trader of any mark which will cause his goods to bear the same name in the market may be as much a violation of the rights of that rival, as an actual copy of the device." If, through the use of the symbol $\Diamond$ , the abradant manufactured by the appel-

lant had become known to the trade as "Diamond Steel," "Rhombus Steel," or "Lozenge Steel," no court would hesitate to restrain a defendant from using any word or device which would cause the article he offered to be called by the same name as the appellant's, because such an act would tend to deceive purchasers, and to create confusion in the trade. It may be that, if a complainant was at the inception of his manufacture or trade in an article which he had marked with a symbol, an alleged infringer might properly be restrained from using the name of the thing symbolized or any symbol called by the same name, if it seemed probable that the goods of the complainant would eventually be known by the name of that thing. That question is not presented here. The question whether it is probable that the product of the appellant would ever be known by the name "Diamond" on account of the use of its symbol is answered by an actual trial of five years. From 1889 to 1894 the appellant sold its abradant under its diamond-shaped symbol, before Marx or the appellees offered their diamond steel. During all this time neither the appellant nor any of its customers ever called or ordered its product by the name of "Diamond Steel," or used the word "Diamond" in connection with its sale, and it is certainly improbable that any of them would ever have thought of that name for it if Marx had not applied it to his product. The appellant's product was not without names, but it had other names, names well known to the trade, names by which it was universally called and ordered,—the names "Crushed Steel" and "Steel Emery." In this state of the case, the use of the word "Diamond" in the name of the German product, and in the names of the companies which sold it, could not have any tendency to confuse it with the crushed steel and steel emery of the appellant. It must, indeed, have had the opposite effect. It necessarily distinguished and differentiated the German product from the American product. Instead of causing the former to be known by the same name as the latter, it gave a new name; a name by which the American product had never been known; a name as different in sight, sound, and sense from that applied to the American product as diamond steel from crushed steel. The use of the word "Diamond," and the picture of a radiant diamond, had no element of deception in it, and therefore furnished no ground for the relief sought by the bill.

A considerable part of the evidence and argument for the appellant was devoted to establishing the fact that Robert J. Marx and the appellees adopted and used the word "Diamond" and the picture of a radiant diamond with the intention of deceiving purchasers and diverting the business of the appellant. The conclusion we have reached renders it unnecessary to consider this evidence. If Robert J. Marx and the appellees ever had such a purpose, they never used any means calculated to accomplish it, and they adopted those admirably suited to defeat it. Their intention, therefore, becomes immaterial. A wrong done or threatened, and consequent injury or probable injury to the complainant, are indispensable elements of every cause of action. The intention to injure another, if no injury is done, and none ever will be done, constitutes no ground for relief. The inten-

tion on the part of the alleged infringer to induce purchasers, through the use of a simulated trade-mark, to buy his goods under the belief that they are another's, furnishes no ground for relief, unless the similarity between the two trade-marks is of a character "to convey a false impression to the public mind, * * * and to mislead and deceive the ordinary purchaser." McLean v. Fleming, 96 U. S. 254, 256; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869, 876. The reason for this rule is that neither actual nor probable "injury," in the legal sense of that word, results from the use of a trade-mark that is not calculated to mislead the public, or to deceive the purchaser, and hence one of the indispensable elements of a good cause of action is wanting. Whatever may have been the intention of Robert J. Marx and the appellees in adopting and using their trade-mark, it does not sufficiently resemble that of the appellant to mislead purchasers, or to convey a false impression to the public. There is no evidence in the record that the appellant has ever suffered any injury from any deception caused by it, and there is no probability that it ever will. Such a case presents no ground for relief, either at law or in equity. The decree below is affirmed.