CENTAUR CO. v. MARSHALL et al.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1899.)

No. 1,239.

1. TRADE-MARKS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

It is not an abuse of discretion for a court in a suit for infringement of a trade-mark or for unfair competition to refuse to grant a preliminary injunction against the use by defendants of wrappers the use of which they have abandoned, or of advertising matter which they agree at the hearing that they will not use pending the suit, since the court may at any time consider a renewed application, should the defendants act in bad faith.

2. SAME—UNFAIR COMPETITION—SIMILARITY OF WRAPPERS.

Every suit to restrain the simulation of dress of merchandise is based on the fact that the defendant will thereby deceive the purchaser into buying his goods as those of the complainant, to the latter's legal damage; and, where the parties have an equal right under the law to the use of the same name for their products, purchasers must be presumed to know such fact, and the defendant cannot be required to see to it that a careless or indifferent purchaser of his product knows that it is not complainant's, but discharges his full legal duty if he so dresses his product that one who seeks to know whose manufacture it is can readily learn by a reasonable examination.[1]

3. SAME—LABELS COMPARED.

The trade wrappers and labels used by defendants on the bottles of Castoria made and sold by them compared with those in use by complainants, and *held* not to show such similarity as would deceive ordinary purchasers.

4. SAME—INJUNCTION—INTENTION OF DEFENDANT.

The intention with which a defendant adopted a particular dress for the merchandise made and sold by him does not alone afford any ground for an injunction against its use, and is immaterial where the dress itself is not calculated to deceive purchasers to the complainant's damage.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

Frank H. Scott and Daniel B. Holmes (Edward Wetmore, on the brief), for appellant.

Henry Wollman (Benjamin F. Wollman, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

[1] As to unfair competition in trade, see note to Scheuer v. Muller, 20 C. C. A. 165, and, supplementary thereto, note to Lare v. Harper & Bros., 30 C. C. A. 376.

SANBORN, Circuit Judge. Upon the motion of the appellant, the Centaur Company, a corporation, the court below enjoined the appellees, George W. Marshall and the Marshall Medicine Company, a corporation, during the pendency of this suit, from using the words "New Label" on the wrappers in which they inclosed the medicine called "Castoria" which they were manufacturing and selling, and denied the prayer of the appellant that a preliminary injunction should issue forbidding them to use the word "Castoria," to use two or three wrappers whose use they had abandoned before the hearing, to use as an advertisement a certain extract from Hall's Journal of Health whose use they agreed in writing to discontinue, and to use a certain wrapper which they were still using and which they insisted they had the right to use. From this order the Centaur Company appealed, and it insists that the temporary injunction should have restrained the appellees from the use of all their wrappers, and from the use of the extract from the Journal of Health; but it concedes that it did not ask the court below to issue any preliminary injunction against the use of the word "Castoria," in view of the decision of this court in Centaur Co. v. Heinsfurter, 84 Fed. 955, 28 C. C. A. 581, 56 U. S. App. 7, to the effect that any one has the right to manufacture and sell "Castoria" under that name.

The purpose of a preliminary injunction is to prevent irremediable injury to some of the parties to the suit during its pendency, and before their claims can be investigated and adjudicated. The burden is on the moving party to show that such an injury is threatened, and will probably be inflicted, before the case can be finally decided, unless the injunction issues. The granting or withholding such a temporary injunction rests largely in the sound judicial discretion of the court, and much latitude is and ought to be allowed for the exercise of that discretion, in view of the fact that the personal acquaintance with and observation of the parties at the hearing, which the trial court enjoys, are of great assistance in reaching a just conclusion. The presumption always is that the decision of that court is right, and, unless it appears from the record with reasonable clearness that it has made a mistake in its apprehension of the facts or has fallen into some error of law, its conclusion should not be disturbed by an appellate court. In view of these familiar rules of equity jurisprudence, the question here is whether or not this record shows that the appellant will probably suffer an "injury," in the legal sense of that term, on account of the withholding of a more sweeping injunction, before its case can be heard and decided upon its merits.

One of the complaints of the appellant is that the court below did not restrain the appellees from using certain wrappers whose use the record shows they had abandoned before the hearing upon the application for the injunction. Another is that it did not forbid them to use as an advertisement the extract from Hall's Journal of Health, which they agreed in writing at the hearing to cease to use. It may be that it would not have been reversible error for the court below to have issued such an injunction, since it could not have injured the appellees. But, on the other hand, there is no evidence or proof that

this refusal inflicted, or that it will inflict, any injury upon the appellant. There is no intimation in the record that the appellees have broken, or are likely to break, faith with the trial court; that they are using, are likely to use, or that they threaten or intend to use, the abandoned wrappers or extract. The circuit court, whose knowledge of the acts and characters of the parties to this suit was necessarily more intimate and complete than ours can be, was satisfied, by their written agreement and affidavits, that they would not do so, and we cannot presume, in the absence of proof, that its conclusion was not justified or that its discretion was not wisely exercised here. If, at any time since the hearing below, the appellees have resumed the use of these abandoned wrappers or of this extract, the trial court has been open at all times for a renewal of the motion of the appellant upon proof of these facts, and its power to give adequate relief has been ample, so that we can conceive of no circumstances under which serious injury can have been entailed upon the appellant by the order of the court in this regard. There was, in our opinion, no error and no abuse of discretion in the refusal of that court to enjoin the use of the abandoned wrappers and the advertisement, and, except as evidence of the intent of the appellees, we here dismiss this portion of this case.

The question remains whether or not the continued use, during the pendency of this suit, of the wrapper with which the appellees dressed their goods at the time of the hearing below, without the words "New Label," will probably inflict injury upon the appellant. The claim of the appellant that it will do so rests upon the proposition that this wrapper is a simulation of that which the appellant used long before the appellees commenced to make or sell Castoria, and which it still uses; that it is calculated to deceive purchasers, and to induce them to buy the appellees' Castoria under the mistaken belief that it is that made and sold by the appellant; and that its use constitutes unfair competition in trade. There is no evidence in the record that any one has been deceived by the appellees' wrapper, or that any purchaser ever was induced by it to buy their Castoria in the belief that it was the medicine made by the appellant, so that the question whether or not it is calculated to and will be likely to work such a deception is susceptible of determination only by an examination of the wrappers used by the respective parties to this suit. These wrappers cover the four sides of the bottles in which the medicine is contained, but the covers of the sides and of the backs of the bottles which the two wrappers of the respective parties furnish are so dissimilar that no claim of probable deception can possibly be sustained upon them, and we shall not reproduce or consider them here. Besides, the fronts of the bottles are generally the only portions noticed or examined by purchasers, and by their likeness or difference the question at issue must be answered. Here are the faces of the bottles of the appellant and of the appellees as they appear when dressed in their respective wrappers, ready for sale, except that the paper used by the appellant is slightly tinged with yellow, while that used by the appellees is white:

Price, 35 Cents

The appellees have been enjoined from using the words "New Label" on their wrapper, so that the question is whether or not this wrapper, without these words, will probably induce purchasers to buy their Castoria in the mistaken belief that it is the appellant's.

Every suit to restrain the simulation of the dress of merchandise is based on the fact that the defendant will thereby deceive the purchaser into buying his goods as those of the plaintiff, to the latter's damage. The deceit, or the probable deceit, of the purchaser, so that he buys, or probably will buy, the articles of one manufacturer or vender in the belief that they are those of another, is a sine qua non of such a suit, because every one has the undoubted right to sell his own goods or goods of his own manufacture as such, however much such sales may damage or injure the business of his competitors. The diminution, injury, even the destruction, of the business of a competitor by such sales is not an injury, in the legal sense, and will warrant no relief, because it is the effect of the exercise of an unquestioned right. In cases to restrain unfair competition by the simulation of trade dresses, it is only when the likeness deceives, or will probably deceive, the buyers into the purchase of the goods of one manufacturer or vender as those of another, and only to the extent

that it thus deceives, that any legal injury results, or that a court of equity may grant any relief. Kann v. Steel Co., 89 Fed. 706, 707, 32 C. C. A. 324, 330, 61 U. S. App. 22; Manufacturing Co. v. Spear, 2 Sandf. 599, 606; Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581; Gorham Co. v. White, 14 Wall. 511, 528; McLean v. Fleming, 96 U. S. 245, 255, 256, 24 L. Ed. 828; N. K. Fairbank Co. v. R. M. Bell Mfg. Co., 77 Fed. 869, 876, 23 C. C. A. 554.

The case in hand differs from an ordinary suit to restrain the use or simulation of a trade name, in this: that in such a case the duty is imposed upon a defendant of distinguishing the name of his product from the name of the complainant's product, so that a purchaser may not be misled into buying his article as that of his competitor, while in the case at bar the appellees have the same right as the appellant to sell their medicine under the name by which that of the appellant is described and known. The name of the appellant's product is "Castoria," and the conceded law of this case, upon this preliminary hearing, is that every one has the right to make and sell Castoria under the very name which the appellant uses to describe and advertise its medicine. Every one is presumed to know the law, and, in this state of the case, if the appellees sell their Castoria to those who seek this medicine simply, but who are careless or indifferent whose manufacture they purchase, they may thereby prevent the appellant from making sales and gaining profits which it would otherwise have obtained, but they inflict no remediable injury upon it, and furnish no ground for relief, because they deceive no one, and they violate no duty which they owe to the appellant or to the public, but merely exercise a commercial right which they possess. Every purchaser is charged with knowledge of the fact that any one may make and sell Castoria, and, if he seeks that made by one manufacturer rather than that prepared by another, it is his duty to examine the wrapper with such a degree of care as would ordinarily ascertain who the manufacturer of the article which he purchases is. The law imposes no duty upon the appellees to see to it that the careless and indifferent know that the Castoria which they buy is made by the appellant and not by another. They discharge their full duty to the appellant if they so dress their product that one who seeks to ascertain whose manufacture it is can readily learn, by a reasonable examination of their wrappers, whether it is made by the appellant or by themselves. Coats v. Thread Co., 149 U. S. 564, 567, 572, 573, 13 Sup. Ct. 966, 37 L. Ed. 847.

Turn now to the wrapper, and see if, in view of these rules of law, a purchaser who sought the appellant's Castoria, and who made an ordinary or even a cursory examination of the wrapper of the appellees, would probably be deceived into buying their product in the belief that it was the appellant's. The Centaur Company is a corporation of New York, and its medicine comes from that state. The wrapper of the appellees gives fair warning that the product which it contains is not made by the appellant, and that it is not manufactured in New York. It carries on its face the statement "Prepared by Castoria Medicine Co., Kansas City, U. S. A.," and the words and letters, "Castoria Medicine Co., Kansas City, U. S. A.," are printed in

large black letters, which would readily catch the eyes and fasten the attention of any buyer who examined the product to learn its manufacturer. The radical differences between the wrappers are so marked and striking that such a purchaser can hardly mistake the one for the other. 'The dissimilarities are carefully noted and enumerated in the opinion of the court below in 92 Fed., at page 610, and we will not recite them again here. Suffice it to say that whether the wrapper of the appellees is taken by itself or in comparison with that of the appellant, whether its general appearance to the inquiring glance of a purchaser who seeks the Centaur Company's product is considered, or it is subjected to a careful and critical analysis of the resemblances and differences between it and the wrapper of the appellant, the result is the same. The conclusion is irresistibly forced upon the mind that such a buyer cannot be deceived by it into the purchase of the product of the appellees for that made by the appellant, and that there was no error in the refusal of the court to enjoin its use before the final hearing of the case.

The arguments of counsel, that a more sweeping injunction should have been issued because the appellees were manufacturing spurious Castoria, because they were promoting its sale by fictitious testimonials, because they were using on their wrappers the catch sentence, "Children cry for it, physicians recommend it," which the appellant had so advertised that the public recognized it as referring to Castoria, and because their acts disclosed an intent to pirate the business of the appellant, have not been overlooked. But the gravamen of the charge in the bill is not that the appellees are selling spurious Castoria, nor that they are using fictitious testimonials, nor that they are publishing the catch sentence of which complaint is made, but it is that they are selling Castoria under wrappers which deceive the purchasers into the mistaken belief that it is the appellant's product. The vital question, on this preliminary hearing, is whether or not the use of the wrapper with which the appellees are permitted to clothe their product, under the existing injunction, will probably effect this deceit, and in this way seriously injure the appellant, before this case can be brought to a hearing on its merits. If it will probably have this effect, the injunction should be broadened; if it will not, there is no just ground for its modification. This question has already been carefully considered, and the conclusion has been reached that the use of this wrapper is not calculated to, and probably will not, injure the appellant. This conclusion is decisive of the question now before us. It leaves no basis for a more sweeping injunction, and it must control this appeal. In view of the fact that this main charge of the bill is not sustained by the proof, it will be soon enough to consider the minor questions presented when the issues in the suit have been framed and the evidence has been taken. Nor is the fact that the appellees intended by the use of their abandoned wrappers, by the publication of the extract from Hall's Journal of Health, by the use of the words "New Label," and by other acts, to deceive the public, and to engage in unfair competition with the appellant, sufficient to overcome the controlling fact that the wrapper which they now use is not calculated to deceive, and probably will

not mislead, buyers. If the use of these means of advertising was proof of an intent to deceive the public and to pirate the business of the appellant, the discontinuance of their use is evidence of the abandonment of this intent. Moreover, the intent is only material when the effect of the means used to accomplish it is doubtful. When, as in this case, it clearly appears that the dress used will not deceive, the purpose with which it is used furnishes no sufficient ground for an injunction. A wrong done or threatened, and consequent injury or probable injury to the complainant, are indispensable elements of every cause of action. Neither actual nor probable "injury," in the legal sense of that word, results from the use of a trade dress that is not calculated to mislead the public or to deceive purchasers, and hence one of the essential elements of a good cause of action is wanting. The intention on the part of an alleged infringer to induce purchasers, through the use of a simulated trade mark or dress, to buy his goods under the belief that they are another's, furnishes no ground for relief, unless the similarity between the two trade marks is of a character "to convey a false impression to the public mind, * * * and to mislead and deceive the ordinary purchaser." McLean v. Fleming, 96 U. S. 254, 24 L. Ed. 828; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 77 Fed. 869, 876, 23 C. C. A. 554, 561; Kann v. Steel Co., 89 Fed. 706, 713, 32 C. C. A. 324, 330, 61 U. S. App. 22.

Our conclusion is that the dress now used by the appellees upon their Castoria after the elision of the words "New Label" is not calculated to mislead the public, that it probably will not deceive purchasers who examine it with ordinary care to ascertain who the manufacturers of the medicine it covers are, and that there was no error in the decision of the court below upon the motion for a preliminary injunction. The order from which this appeal was taken is accordingly affirmed.