POSTUM CEREAL CO., Limited, v. AMERICAN HEALTH FOOD CO.

(Circuit Court of Appeals, Seventh Circuit.    October 21, 1902.)

No. 873.

1. TRADE-MARKS—INFRINGEMENT.
    The trade-mark "Grape-Nuts," adopted as the name of a cereal food preparation, is not infringed by the name "Grain-Hearts," used to designate a similar product.

2. SAME—UNFAIR COMPETITION.
    The labels and packages used by complainant for its cereal food preparation, "Grape-Nuts," and those used by defendant for its similar product,

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

"Grain-Hearts," compared and taken as a whole. *held* so dissimilar in appearance that purchasers of ordinary intelligence, using ordinary attention, would not be likely to be misled into purchasing one for the other, and that defendant could not be charged with unfair competition in the absence of evidence that purchasers had actually been deceived.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

The appellant, complainant below, filed its bill alleging the pirating by the defendant below, appellee here, of its trade-mark, and also of unfair competition in trade, with respect to the placing upon the market and sale of a certain cereal preparation designated "Grape-Nuts." The bill charges substantially that the complainant was possessed of a certain secret formula for a food product composed of wheat and barley, of distinctive appearance in texture and color, of a peculiar brownish color, of granular form, and of a crisp and brittle texture, easily masticated and readily soluble in water, and quickly digested, to which it had given the name "Grape-Nuts," as indicating the origin and source of manufacture. This name was placed upon the labels and packets containing the product in the form of a compound word connected by parallel hyphens, and appearing upon substantially plain type in light color upon a dark band extending across the label or package. Above this word are the words "Fully Cooked, Pre-Digested," and also the words "Dextrose and Grape Sugar." Below are the words "A Food for Brain and Nerve Centres." The word and trade-mark "Grape-Nuts" was registered June 14, 1898. The declaration in the statement for registration contains the following: "Upon the edge of the package appear the words, in plain black type, 'Genuine Grape=Nuts,' in connection with the autograph of C. W. Post. The entire printed matter, with the exception of the words 'Grape= Nuts,' is printed in black upon a yellow or buff colored label which envelopes the package containing the food, 'Grape=Nuts' appearing in yellow or buff like the label; but the color of the label, the style and color of type, and the various items of printed matter and other accessories above referred to, may be varied at pleasure or altogether omitted, without materially altering the character of the said trade-mark, the essential feature of which is the words 'Grape=Nuts.' " The bill also alleged that the product was placed upon the market in packets of "peculiar form, size, shape, capacity, and material, the packages having thereon a peculiar label, both in color of background, in color of type and literary matter, and arrangement thereof, namely, an angular six-sided box, about five inches in height, about four inches in width, and about two inches in thickness, having a label covering the entire six sides thereof, the background of which label is a light yellow, and has entirely extended across the back and front sides thereof a dark band about seven-eighths of an inch wide, and having thereon the double-hyphenated words 'Grape=Nuts' in plain light type, on one side of both of which bands appear among other things the words 'Fully Cooked, Pre-Digested,' 'Dextrose and Grape Sugar.' 'Made by Special Treatment of entire Wheat and Barley.' And on the other side of which band appear the words 'A Food for Brain and Nerve Centres.' * * * The hyphenated words 'Grape=Nuts' or 'Grape=Nut' also appearing upon all sides of said packet, and, with the exception of the word and trade-mark 'Grape=Nuts' on said bands, said bands and words and literary matter in blue ink on such light yellow background." The bill charged that the defendant below, appellee here, had produced and placed upon the market a food·product substantially identical in texture, color, and other peculiarities to the product designated as "Grape=Nuts," and designated and labeled with the double-hyphenated word "Grain=Hearts" in plain type, in like color, and extending across the label and package. "Which hyphenated word, with such light type and dark band, your orator is informed and believes, and therefore avers, are so similar in appearance, sound, and arrangement that they are calculated to deceive and do deceive the ordinary purchaser into purchasing the defendant's product, believing it to be the genuine product of your orator; that the packages in which the product of defendant is put upon the market are identically of the same form, size,

119 F.—54

and capacity as those of the complainant, inclosed by a label in the same manner as in complainant's patent, with the same peculiar yellow background as the label of the complainant, with printed matter thereon in blue ink, and of substantially the same context and arrangement as the complainant's, and in the same, or substantially the same, colors and style of lettering."

The answer denied that the complainant originated the particular form, and contrasting labels, colors, letters, style of letters, and wording thereon, used upon its packages; denied that it originated the formula under which the food product was manufactured, or the form and particular size and capacity of packets for containing the food product; denied that the lettering and the arrangement and color were unusual; but alleged that the size and form of the package for different products are governed by considerations of the cost thereof to the manufacturer; that the thick paper or cardboard from which cartons or packets are made, such as are used by the complainant and by the defendant in putting up and marketing their several products, are furnished by the paper mills, of a standard, arbitrary, and uniform size, being governed by the weight of a pound package of the product, to conform to the settled habits of the trade to sell food products in one-pound packages, or in packages containing a fractional multiple of a pound weight. The face of the complainant's package is here reproduced. [See Fig. 1.]

The back of the packet is substantially the same, except that directions for use are substituted for the imprint below the words, "A Food for Brain and Nerve Centres." Each end of the carton has printed thereon in black lettering upon yellow ground the following: "Genuine Grape=Nut Packages have the signature of the originator on the ends of each package, C. W. Post." One side of the carton has printed thereon "Directions for Use," the other a recommendation to athletes and brain workers, and with respect to the supposed virtues of the cereal product; all appearing in black lettering upon a yellow ground. The face and back of the defendant's package are alike, and are here reproduced. [See Fig. 2.]

Each end of the carton has printed thereon upon yellow ground the oblique blue band upon the red heart, with the double-hyphenated compound word in white letters "Grain = Hearts," and above and underneath the band the words in black lettering "Only the Genuine Have This Trade-Mark." One end of the carton has upon yellow ground the oblique blue band upon the red heart near the top of the carton, with the double-hyphenated word "Grain= Hearts" in white lettering, and above it in black ink the words, "Cooked Ready for Use," "A Brain and Nerve Food," and below it in black ink the words, "A Perfect Food for Athletes," following which are directions for use. The other end has the same imprint of a red heart and oblique blue band and trade-name, with the words above it in black ink, "Ready for Use. Nutricious. Delicious," and below, in like ink, "A Great Brain, Nerve and Muscle Food, containing all the known food elements, a very economical Food," and directions for use.

At the hearing the bill was dismissed for want of equity. (C. C.) 109 Fed. 898. From the decision dismissing the bill for want of equity, the complainant below appealed to this court.

Philip Mauro and George W. Mechem, for appellant.

E. H. Bottum, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge. We have so often spoken to the subject of unfair trade, and the law upon that subject is so well established by the repeated decisions of the ultimate tribunal and of the various circuit courts of appeals, that reference to the decisions would be superfluous. The principle is settled that:

"One may not legally use means, whether marks or other indicia, or even his own name, with the purpose and to the end of selling his goods as the goods of another. If such means tend to attract to himself the trade that

Fig. 1.

---

**CUT HERE.**

 Run a sharp knife along the dotted line and squeeze the edges of box to make it gap. See that gap is closed after the required amount of food is poured out. Don't cut top off.

# FULLY COOKED,
## PRE-DIGESTED.

### Dextrose and Grape Sugar,

**Made by Special Treatment of Entire Wheat and Barley.**

# Grape = Nuts

REGISTERED IN UNITED STATES PATENT OFFICE.

# A FOOD FOR BRAIN AND NERVE CENTRES.

The System will absorb a greater amount of nourishment from 1 Pound of Grape-Nuts than from 10 Lbs. of MEAT, WHEAT, OATS OR BREAD.

## COSTS ABOUT ONE CENT PER MEAL.

### "ECONOMY."

Four heaping teaspoons of Grape-Nuts for the cereal part of a meal is the limit for an ordinary person. The food is condensed, and a small quantity supplies more nourishment than a large dish of the more bulky cereals. BE MODERATE.

### Grape Nuts are unlike any other preparation.

## Postum Cereal Co., Lim., Battle Creek, Mich.

Fig. 2.

**COOKED READY FOR USE.**

A
BRAIN
FOOD

GRAIN=HEARTS

A
NERVE
FOOD

DELICIOUS
NUTRICIOUS

**THE REAL NUT OF GRAINS.**
**SCIENTIFICALLY PREPARED**
FROM ENTIRE WHEAT AND BARLEY, PRODUCING THAT
**Delicate Grape-Sugar Flavor.**

**A CONDENSED HEALTH FOOD**
**⊱PREDIGESTED⊰**
Equal to many times the same quantity of Bread or Meat.
AMERICAN HEALTH FOOD CO., Milwaukee, Wis., U.S.A.

would have flowed to the person previously accustomed to use them, their use will be restrained by the law." Pillsbury v. Flour Mills Co., 12 C. C. A. 432, 64 Fed. 841.

In other words, no one may lawfully so dress his goods that he can palm them off as the goods of another manufacturer. We have no disposition to recede in the slightest degree from the law as declared by this court. It only remains to consider whether the appellee has so dressed his product, and whether there is such similarity in the carton used by the parties, that the purchasing public would be apt to mistake the goods of one for those of the other. We pass the question of the alleged piracy of trade-mark with the statement that we are unable to say that the compound word "Grain-Hearts" can possibly be deemed an infringement of the technical trade-mark "Grape-Nuts." They are not idem sonans; and, as suggested in the opinion of the court below, are "dissimilar in sound, appearance, and suggestion."

There is in this record no evidence produced by the complainant below of any actual mistake, or purchase by the public of the goods of the defendant as the goods of the complainant. There is no evidence that the dress of the one would be mistaken for the dress of the other. The defendant's evidence is that of sellers at retail, and to the effect that the one is not likely to be mistaken for the other. The complainant lays some stress upon the testimony of one of these witnesses that he had occasionally substituted one for the other by mistake; but he explains that the reason was because the goods were placed on a shelf side by side, and in the haste of business he took one for the other without looking, and he concluded with the significant remark that in all such cases "they were returned to us as the wrong article, and not the article called for." We do not mean to say that proof of the existence of actual deception of purchasers is essential. In the case of a manifest liability to deception, there need be no such proof; but, unless the dissimilarity is so marked that the court, upon inspection of the label, is fully persuaded that the public cannot be imposed upon by the dress of the article, there should be proof of actual mistake by purchasers. In respect to proof of actual mistake in the case at bar, the evidence is wholly with the defendant below. But aside from that, we are constrained to say that, upon the face of these labels, we perceive no such similarity as would impose upon a purchaser exercising the ordinary inattention of purchasers. We should be quite content to rest our decision upon the argument of the opinion of the court below, contained in the statement of the case, but we add a few suggestions.

It was strenuously insisted that the officers of the defendant had fraudulently sought to imitate the goods of the complainant: First. By imitating an article said to be the only one of its class, namely, a product produced by the mixture of wheat and barley. In this we think the complainant is mistaken. If it be assumed that the complainant was the first to produce such a compound, it nevertheless does not remove the article from the class of cereals or breakfast foods with which the country is overrun. Such foods, composed wholly of wheat, of wheat and rye, or of wheat and oats, are quite common, and it was the free right of every one to put upon the

market a mixture of wheat and barley. The complainant must rely upon the dress given to the package which contained the product of the defendant. Second. It is claimed that the name is of similar general character, and in many features identical; that the package used by the defendant is the same in size and shape, and identical in its three dimensions; that the background is of the same color, with the same distinctive features of dress, color, and arrangement, and therefore the competition is unfair. We need not enter into discussion of the conflicting evidence with respect to the intention and motive of the officers of the appellee, because that is of no moment, if the dress itself is not calculated to deceive purchasers. Centaur Co. v. Marshall, 38 C. C. A. 413, 97 Fed. 785. The question recurs whether we can say that these labels are apt to be mistaken, the one for the other. There may be, indeed, some minor points of resemblance; but we should look at the matter as a whole,—both at the resemblances and the differences,—to ascertain whether, in view of the differences, the resemblances are so marked that the ordinary purchaser would be likely to be deceived, and should look at the subject in the manner suggested by Mr. Justice Brewer in Lorillard Co. v. Peper Co., 30 C. C. A. 496, 86 Fed. 956, that:

"In determining the question of fraudulent imitation of packages and labels, merely noting the points of difference or similarity is not sufficient. The packages and labels must be considered as a whole."

The question resolves itself to this: Whether these two labels are so alike that one of ordinary intelligence, desiring to purchase the one product, would be misled into purchasing the other. The ordinarily inattentive purchaser is attracted by sound and color, and possibly to some extent by the size of the package. It appears here that the question of size in the manufacture of the carton for cereals is determined by the proprietors of the paper mills manufacturing them, by the size of a pound of the product, and that all cereal food is sold in like packages. It is proven, also, that a large proportion of packages containing cereal food, before the placing of "Grape=Nuts" upon the market, was of a yellow background. The background of the two packages in question is somewhat similar in color, although that of "Grain=Hearts" is of a lighter shade than that of "Grape= Nuts." But there are certain distinctive marks which are peculiarly suggestive to the eye, which, in our judgment, so stamp these labels and indicate such marked dissimilarity that we think the purchaser who, relying upon his knowledge of the character of the brand he wished, should mistake the one for the other, would be stupid indeed. The band in the complainant's label upon which is imprinted the compound word "Grape=Nuts" in yellow lettering, extends directly across the face of the package, and is said to be of a dark blue color, although it is hardly distinguishable from black. The band upon the defendant's package runs obliquely across the face, and is of a bright blue color, with the compound word "Grain=Hearts" upon it in white letters, and this band runs across a large red heart, prominently displayed. This device appears upon every side of the defendant's package, while the band of the complainant's package is only upon the face and back. The distinguishing feature of the defendant's

label is the red heart. It is so marked and so pronounced that one could not fail to see it, and it would challenge the attention of any person,—even a stupid person,—who, seeking to purchase the product of the complainant, and knowing its label, should be presented with the product of the defendant.

The point of resemblance insisted upon in the use of the double hyphen in the compound word appears to us of slight moment. It is unusual, indeed, to use the two parallel lines; but we doubt if any but the most observant purchaser would notice it. An inattentive purchaser, using the slightest care, would observe the distinguishing feature of the red heart a hundred times where the careful and attentive purchaser would notice the double hyphen once, and the latter, observing it, would not be deceived, for that same care would disclose the prominently displayed red heart peculiar to the one and absent in the other.

We need not pursue the subject. We are fully satisfied that the dissimilarities are such, and are so pronounced, that the one label is not likely to be mistaken for the other.

The decree will be affirmed.