## A. G. MORSE CO. v. WALTER M. LOWNEY CO.

(District Court, N. D. Illinois. January 29, 1919.)

No. 30231.

TRADE-MARKS AND TRADE-NAMES ⬦⟶70(4)—UNFAIR COMPETITION—COLOR OF
BOXES.

> Use by defendant, for putting up milk chocolates, of a box and ribbon
> of the same shade of red as that first used by complainant for that pur-
> pose, may not be complained of as unfair competition, even if there was
> an unlawful intent; there being no other similarity, and defendant's box
> being distinguished by its registered name and trade-name, long adver-
> tised and older in use than those of any competitor.

In Equity. Suit by the A. G. Morse Company against the Walter
M. Lowney Company. Bill dismissed.

William J. Ammen, E. P. Vail, and Albert B. Joyner, all of Chi-
cago, Ill., for complainant.

George O. G. Coale and John E. R. Hayes, both of Boston, Mass.,
and George T. May, Jr., of Chicago, Ill., for defendant.

CARPENTER, District Judge. This is a bill in equity filed October
8, 1910, in the circuit court of Cook county, Ill., by A. G. Morse Com-
pany, complainant, a corporation of Illinois, against the Walter M.
Lowney Company, defendant, a corporation of Massachusetts, seek-
ing relief from unfair competition in the dressing of a candy box to
hold milk chocolate creams. In due time the suit was transferred to
the then Circuit Court of the United States for the Northern District
of Illinois, Eastern Division, and the pleadings were completed; the
answer denying liability. Most of the evidence was taken by deposi-
tion and the record is large. The material facts are substantially as
follows:

The complainant, for many years, was engaged in the manufacture
of a variety of candies, and in 1905 began making milk chocolate
creams, putting them on the market in one-half and one pound boxes
of four different colors and of a shape usual in the trade. Three of
the colors were eliminated from that line of merchandise in a few
months, and in 1906 the red package was the only one retained. The
lettering and design on the box, or package, was varied from time to
time, and about 1907 a box in its present color and design was deter-
mined upon, and since then milk chocolate creams have been sold by
the complainant only in boxes of that character, in one-half pound,
pound, and two and five pound sizes. The box is red in color, with a
yellow design located at its left end, comprising a group of three
women, one holding a trumpet extending more than halfway across
the box, another supporting a shield on which is the letter "M," and
the third holding a crown, the figures filling the left end of the cover;
the right half of the cover having the words "Morse's Milk Chocolate
Creams" (each word being on a separate line), the design and cut be-
ing mainly in yellow, the box being tied with a narrow red ribbon,

with a bow somewhat to the left of the center, where the ribbon is crossed. There are no other markings on the box.

The largest part of the business of the complainant was in the vending of milk chocolate creams, and, at the time of the filing of the bill, the territory of its activity covered approximately 15 states, with branch houses at Kansas City, Minneapolis, Denver, Buffalo, Cleveland, and Detroit. The main office and factory was in Chicago.

The complainant's merchandise appears to have been popular, and its sale was well established prior to January 1, 1910. The box in question was referred to generally between the complainant and its customers—that is, the retailers—as "the Red Box." This may have been, however, because it was the only red box that complainant sold. The other candies handled by it and its retailers were sold in boxes of various colors and shapes, and, while the testimony shows that some of the public who bought across the counter in drug stores and candy stores would refer to the milk chocolate cream box as "the Red Box," still it falls short of establishing the fact that the public at large bought from the retailers by the appellation "Red Box." It appears that the name "Morse" had been extensively advertised and shown throughout the trade, in periodicals, window displays, posters, and signboards, and that the name, rather than the shape or style of the box, weighed with the consumer.

Practically all the advertisements of complainant's milk chocolate creams contained a picture of its particular box, showing the design and lettering in full, so that its characteristics may be assumed to have been well known to the public. There appears to have been no attempt to advertise the words "Red Box" as a catch phrase, or as descriptive of the merchandise, and apparently complainant always was putting forward the name "Morse" or "Morse's" as indicating its goods.

The design and lettering on the box was copyrighted by the complainant in April, 1906, and the name "Morse's" is there prominently displayed, being of somewhat larger type and the lettering being different from that of the balance of the wording on the box.

The defendant and its predecessors, all of whom bore the name Lowney, have been in the candy business in Boston, Mass., since 1877, and began the manufacture of chocolate bonbons in 1883, in which year they made not more than 20 varieties. Advertising began in 1887 or 1888, and the goods were fairly well distributed east of the Missouri river in 1890, but were sold in bulk. In 1893, the defendant erected a building at the World's Fair in Chicago patterned after the Temple of Vesta and there sold the first package goods of candy that were placed on sale. These goods were put up in ornamental boxes which the retailer displayed on his counter to engage the attention of the purchaser, and the attractiveness of the package has since become an important factor in the business. This increased the trade of the defendant materially, and the fancy box served as an advertisement to both manufacturer and dealer.

This plan was adopted by others, and at the present time all candy manufacturers sell package goods put up in fancy boxes; each manufacturer producing a variety of packages of different colors carrying

his own name or some appropriate design, which distinguishes his output from that of his competitors.

In February, 1911, the defendant had over 150 varieties of packages and annually made many changes in design. This was to promote the salability of the packages, by appealing to the desire of the customer for something new, and it gave the salesman or retailer something fresh and attractive to offer. This practice is now general in the trade.

Since the World's Fair in Chicago, the name "Lowney" in peculiar lettering has been stamped or printed on every package made by defendant, and has been impressed upon the bottom of each piece of chocolate candy put out by it, and often is cut in the lace paper which forms the interior ornamentation of the boxes.

In 1896, the picture of the so-called "Lowney girl" was adopted by the defendant as a trade-mark and duly registered. The name "Lowney" was also registered, and the name and the "Lowney girl" have been advertised all over this country and in foreign countries, and used continuously since that time. During the 10 years ending December 31, 1911, the defendant spent over $2,400,000 in advertising in the United States alone, and during the 8 years preceding that perhaps another $1,000,000 to make the public familiar with the word "Lowney" and the Lowney product; the advertisements being in magazines, street cars, periodicals, cook books, window displays, etc.

In 1908, the defendant added to its line of manufacture and sale the milk chocolate creams, which were distributed first in a maroon box, and then in a bluish tile box of standard size and shape, differing very little in its measurements from the box of the complainant and other manufacturers. In January, 1910, the color of this last box was changed so that it was, and is now, substantially the same shade of red as that used by the complainant. On the cover are the two registered trade-marks of the defendant; the "Lowney girl" appearing on the left half of the cover and the words "Lowney's Milk Chocolate Creams" to the right, on the remaining part of the cover. The figure of the girl is on a greenish yellow background of slightly different shade from the yellow figures appearing on the Morse box, and the design is surrounded by a gilt medallion on a shaded background. The words "Assorted Flavors" are added below in black and in smaller type than the other lettering. The box is tied with a red ribbon about the same width and color as that used on the Morse box, and complaint is made that the ribbon was so tied that it obscured part of the "Lowney girl" and was so placed that it concealed, in whole or in part, the name "Lowney's"; but an examination of the exhibits shows that the ribbon was too narrow to cover entirely the name "Lowney's", even if it were placed directly across the middle of the name, and that at best the bow would obscure only a part of the "Lowney girl."

It also appears that the ribbon would slip sometimes from out of its position on the box; but the boxes in evidence show that the ribbon in its natural place, across the center of the box, would obscure only the lower part of the letters in the name, and that the name "Lowney's" could be easily read by any one looking at the box, even in the most casual manner.

One of complainant's witnesses testified:

"Lowney's name is a very large factor in the sale of his candies; I think he is more widely known than any other candy man in the United States; he has a high reputation in the sale of chocolates and candies; he has been before the public for all these years and well established. The mere fact that Lowney's name was on the package would have a tendency to help sell the goods."

If the name of the Lowney Company sold the goods, or helped to sell the goods, it is inconceivable that the defendant should attempt to conceal that name, and, if the desire were to conceal the name, certainly a ribbon sufficiently wide for that purpose would have been used, and so attached to the package that it could not slip.

In the fall of 1909 there had been some talk among those in authority in the offices of the defendant of changing the color of the blue tile box, which had been found not successful in selling the cream chocolates of the defendant. While this change was under consideration, a letter was received from one Cunningham, who was a stockholder in the defendant company and manager of its branch house at Kansas City. The letter was as follows:

"Kansas City, Mo., Nov. 1, 1909.

"The Walter M. Lowney Co., Boston, Mass.—Gentlemen: Our Mr. Cunningham talked with you while in Boston about putting out a large red one-pound box for the Old-Fashioned Chocolates. We wish you could see your way clear to do this as quickly as possible, making this box appear as large as you can, but making it a bright red box, and we would suggest that they use yellow largely on the print.

"The only box that Morse seems to be selling is a large red box of Milk Chocolates, and we think that a package of this kind would put them out of business to a certain extent. We don't consider them much competition, but "every little bit helps." Also we would like to have you send us as early as you can the Milk Chocolate and Nut Milk dummy packages, a sufficient amount to make a number of window displays in the city. We believe with the dummy packages we could increase the sale of the item considerably.

"Very respectfully, [Signed] Cunningham Brokerage Company,
"By George W. Cunningham."

At this time the defendant was selling "Old-Fashioned Chocolates," as referred to in the first paragraph of the letter, and these chocolates are very different from milk chocolate creams. The receipt of this letter was acknowledged on November 4, 1909, and on the same date the defendant wrote to its Chicago branch, asking for a box of Morse's Milk Chocolate Creams. A package was received in due course and given to the box maker of the defendant company, and the defendant's present box was then produced and used in the distribution of its product.

The complainant claims that the two boxes are so confusing in appearance that the ordinary buyer is deceived in purchasing the goods of the Lowney Company, instead of the goods of the Morse Company; that Lowney's goods are sold to the dealer or retailer for $2 per dozen for the half-pound boxes and $4 per dozen for the pound boxes, whereas Morse's goods are sold to the retailer at $2.75 per dozen for the half-pound boxes and $5 per dozen for the pound boxes; that the dealer is therefore in a position to make a bigger profit on a sale of Low-

ney's goods to a prospective customer than on a sale of Morse's; that the quality of Lowney's goods is poorer than that of Morse's; that it is being injured, in that its trade is thus reduced; that the buying public is confused and misled; that the reputation of its goods suffers because of the alleged low quality of the Lowney goods, which the public may buy believing them to be Morse's goods; that there is shown a deliberate intent to simulate or copy the color and the design of complainant's package; and that this resulted in unfair competition.

The record shows that red boxes of different shades and shapes were used in the candy business many years before complainant began to distribute its product, and that other candy makers sold milk chocolate creams in red boxes before Lowney commenced the distribution of its milk chocolate creams in the box in question, and defendant had used red boxes for candies other than milk chocolates; but the complainant alleges that it did not feel the competition from the other red boxes, and that they were not of the same shade of red as the complainant's box. The complainant does not claim an exclusive right to red as a color; and the evidence shows that it was not the first manufacturer to sell milk chocolate creams in packages; but it claims that under the facts in the case there is shown a deliberate intent to steal its trade and to dispose of the defendant's wares on the reputation which the complainant had established, and that, so far as the sale of milk chocolate creams is concerned, it has an exclusive right to manufacture and vend them in a red box of the design, shade of red, and character that it is now using, it being the first to use this particular red box for milk chocolate creams, and that the defendant should be compelled to use some other color for its box.

The defendant denies that the quality of its product is lower than that of the complainant, and alleges that no manufacturer has an exclusive right to the box top of any specific color; that colored papers are open to general use, providing only that the vendor marks his box plainly with his own name and trade-mark; and that by unmistakably placing its own name and trade-mark or marks upon its milk chocolate cream package it has taken every precaution required by the law to enable the purchaser who uses ordinary care to distinguish its goods from those of its competitor. It alleges that, if the contrary is true, then in the candy business the supply of colors would have been exhausted long ago, and the sale of package goods, whether milk chocolate creams or otherwise, would be practically a monopoly shared by a very few manufacturers, who could prevent all others from entering the package goods field, solely because they were the first to make a box of a certain color.

The evidence shows that the arrangement of the design and the lettering on the package as used on both these boxes "is an almost uniform arrangement in the candy business. It seems that would be the only way." The evidence offered both by the defendant and the complainant shows that the Lowney name is a very large factor in the sale of the candies manufactured by the defendant, and officers of the complainant company also admitted that the fact that the Lowney name appeared upon the package would have a tendency to help the sale of the goods.

The record shows that there are two descriptive terms now used on package goods, "assorted chocolates," which have cream, nut and jelly centers, and "assorted flavors," which indicates that the chocolate creams have centers of different flavors. The manufacturing cost of chocolate creams of assorted flavors is less than that of assorted chocolates. Chemists on both sides testified that there was no adulteration in either goods; that they were pure in their elements, although made from different recipes, so that from the point of purity they were of equal quality.

Many witnesses testified as to the methods of doing business of both the complainant and the defendant, and the record discloses a considerable amount of trouble which clerks had in distinguishing one box from the other; but, so far as I can discover, only five purchasers were deceived as to what they bought, and these five all discovered the mistake before the candy was consumed, and four of them returned it. It seems that the dealers, as to these five, when Morse's chocolates were asked for, took a Lowney box, wrapped it up in paper, and gave it to the customer. The moment, however, the wrapping paper was removed the mistake was discovered. No instance is shown of a purchaser handling a box in the retailer's store being deceived as between Morse and Lowney.

The bill seeks, for relief only as against unfair competition. No claim is made that the defendant is infringing, or purposes to infringe, upon any technical trade-mark of the complainant.

In this circuit no one has a monopoly of form, of color, of the shape of letters, or of geographical names. Charles E. Hires Co. v. Consumers' Co., 100 Fed. 809, 41 C. C. A. 71. Such nonexclusive trade-names and devices are public property in their primary sense. See, also, Coats v. Merrick, 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Diamond Match Co. v. Saginaw Match Co., 142 Fed. 727, 74 C. C. A. 59; Continental Co. v. Larus Co., 133 Fed. 727, 66 C. C. A. 557; Regensburg & Sons v. Portuondo Cigar Mfg. Co. (C. C.) 136 Fed. 866.

The rule governing cases involving charges of unfair competition is:

"One may not legally use means, whether marks or other indicia, or even his own name, with the purpose and to the end of selling his goods as the goods of another. If such means tend to attract to himself the trade that would have flowed to the person previously accustomed to use them, their use will be restrained by the law." Pillsbury v. Flour Mills Co., 64 Fed. 841, 12 C. C. A. 432.

As was said in Postum Cereal Co. v. American Health Food Co., 119 Fed. 848, 56 C. C. A. 360, after quoting the above:

"In other words, no one may lawfully so dress his goods that he can palm them off as the goods of another manufacturer."

When, however, a manufacturer places conspicuously on the packages or cartons in which his goods are sold registered trade-marks which have been issued to him, he has distinguished his goods from those of other manufacturers, especially in cases where shapes of boxes and colors of wrappers are common to the trade and his marks are older in point of use and better known than those of his competitor. Sterling Remedy Co. v. Eureka Co. (C. C.) 70 Fed. 704; Lorillard v.

Peper, 86 Fed. 956, 30 C. C. A. 496; Postum Cereal Co. v. American Co., 119 Fed. 848, 56 C. C. A. 360.

There is no proof that the defendant has attempted to palm its goods off as the goods of the complainant. Defendant at all times endeavored to distinguish its goods from the goods of the complainant.

This controversy becomes serious only by reason of the Cunningham letter. It is true that Cunningham asked for a red box for Old-Fashioned Chocolates, and stated that he could put Morse out of business "to a certain extent" if he had it. It is also true that the defendant got one of Morse's red boxes, adopted substantially the same color for its boxes, but placed thereon its own registered trade-marks, so that the purchasing public under no circumstances could be deceived into thinking that it contained Morse's goods. It may be that the enthusiastic Cunningham believed he was doing something sharp in suggesting the use of the red box, and it may be that the defendant had the same idea, but an unlawful intent is immaterial so long as the one inspired by it remains within the law. While I do not think the record here discloses any unlawful intent on the part of the defendant, nevertheless, if it did, and the defendant made use of none other than lawful means to make its unlawful intent effective, the complainant has no redress. Centaur Co. v. Marshall, 97 Fed. 785, 38 C. C. A. 413; Postum Cereal Co. v. American Co., 109 Fed. 848, 56 C. C. A. 360.

An examination of the record discloses no similarity between the two boxes, save the solid color, red. Were this a question of trade-mark, clearly there is no such likeness between the two designs as to give either party any rights against the other. As was said in McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828:

"The defendant is not an imposter; he has openly and plainly represented his [goods] to be exactly what they are."

All that complainant can claim in this case is that it was the first to put milk chocolates in a red box of this shade. That fact does not prevent anybody else from using a red box, provided proper distinctive marks are placed thereon, so as to distinguish the product from that of the pioneer.

"The complainant has no exclusive right to the red color, nor to the size and shape of the packages, nor to the use of gilt letters on them. These things are undeniably open to the trade." American Tobacco Co. v. Globe Tobacco Co. (C. C.) 193 Fed. 1015, at page 1017; Diamond Match Co. v. Saginaw Match Co., 142 Fed. 727, 74 C. C. A. 59.

Every candy dealer having the right to put up his product in red boxes, the casual purchaser of intelligence could not be misled into believing that the defendant's goods were those of the complainant. Of course, an unscrupulous dealer could show a red box to a purchaser and say that it was Morse's, wrap it up in a piece of paper, take the money, and send the purchaser home; but the moment the wrapping paper was removed the purchaser must discover the mistake and the dealer suffer for the deception.

"The defendant is not responsible for the fact that tricky retailers represent its manufacture as that of complainant, knowing better, provided defendant has done its legal duty in distinguishing its own product from that

of complainant." Rathbone v. Champion Co., 189 Fed. 26, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258; Schlitz Brewing Co. v. Houston Co., 241 Fed. 817, 154 C. C. A. 519.

The law will not permit a manufacturer to put in the hands of an unscrupulous dealer goods that may be palmed off upon the purchaser as having been made by a competitor; but this presupposes that the similarity of the packages, cartons, cans, or boxes is such that the casual purchaser would be easily confused. Wherever the markings are such that the manufacturer must be known, there is no unfair competition. As was said in Kann v. Diamond Steel Co., 89 Fed. 706, 32 C. C. A. 324:

"Every suit of this character is founded on the fact that the action, or the proposed action, of the defendant has deceived, or is calculated to deceive, ordinary purchasers buying with usual care, so that they have purchased, or will probably purchase, the goods of the defendant under the mistaken belief that they are those of the complainant, to the serious damage of the latter. The deceit, or probable deceit, of the ordinary purchaser to such an extent that he buys, or will probably buy, the property of one manufacturer or vendor, in the belief that they are those of another, is a sine qua non of the maintenance of such a suit, because every one has the undoubted right to sell his own goods, or goods of his own manufacture, as such, however much such sales may diminish or injure the business of his competitors."

Whatever confusion exists between the packages of the complainant and those of the defendant arises from features common to everybody in the trade, and to which nobody has an exclusive right, namely, the size and shape of the package, its color, and its ribbon. The features to which the parties have individual rights, those features which were put upon the packages to distinguish them—that is, the trade-marks or designs, and the names of the makers—are radically different, and it is upon these distinguishing features that the public relies, and not upon features common to the trade.

I find that the defendant has placed conspicuously, on a box of shape and color which he as well as the world had a right to use in the candy trade, two registered trade-marks to distinguish his goods from those of other manufacturers, and that those trade-marks were older in point of use than those of the complainant and defendant's other competitors. In other words, considering the things that were common to the trade, the differences between the complainant's box and the defendant's box are more conspicuous than the likenesses. Complainant has not shown "deception arising from some features of its own not common to the public."

The bill will be dismissed for want of equity; and it is so ordered.