## P. LORILLARD CO. v. PEPER.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 900.

1. FRAUDULENT COMPETITION—IMITATION OF PACKAGES AND LABELS—SLIGHT CHANGE IN DEFENDANT'S LABEL.

Where defendant's label has been slightly changed shortly before suit commenced, but still remains practically the same, the complainant is not restricted to an action at law for an injury resulting from the use of the old label, but equity may consider both together.

2. SAME—GENERAL RESEMBLANCE OF PACKAGES.

In determining the question of fraudulent imitation of packages and labels, merely noting points of difference or similarity is not sufficient. The packages and labels must be considered as a whole.

3. SAME—INJUNCTION.

Complainant's label for tobacco packages consisted of the words, "P. Lorillard Co.'s Tuberose;" the words being peculiarly placed with reference to each other,—the letters composing the name of the manufacturer decreasing in size from left to right, and those composing the name of the brand increasing in like manner. Defendant's label consisted of the words, "Pepers True Smoke;" the words and letters being arranged in the same way as upon complainant's label. In the size, form, and coloring of the letters, however, as well as in the size of the label itself, it differed from complainant's label. Both packages were of the same size and shape, which characteristics were common to the trade, and both made of blue and white striped cloth, but the stripes on defendant's package were four times the width of those on complainant's. Held, the resemblance was not sufficient to warrant an injunction.

4. SAME—DECEIT OF PURCHASERS.

The court must use its own judgment as to similarity of packages and labels, and the fact that others may differ from it in opinion, or that a few isolated purchasers have been misled, does not necessarily bind it.

5. SAME—ADOPTION OF ENTIRELY NEW PACKAGE BY DEFENDANT.

The fact that the defendant had formerly used an entirely different style of package, and, after being advised that complainant's goods were more popular, changed to his present style, while it raises a strong suspicion of fraudulent intent, is not conclusive, if the rest of the evidence seems to negative such intent.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

This suit was commenced by the filing of a bill on July 29, 1895, in the circuit court of the United States for the Eastern district of Missouri, by the appellant, as plaintiff, complaining of unfair competition in trade by the defendant, the appellee, in the use for the sale of smoking tobacco of a package called the "True Smoke Package," which was alleged to be a deceptive imitation of plaintiff's package, known as the "Tuberose Package." The contention of plaintiff was that the resemblance and the general appearance of the packages were such that consumers had been, and were being, deceived thereby, and were led to purchase the defendant's tobacco, supposing it to be of plaintiff's manufacture, thus greatly injuring plaintiff's business; and the prayer was for an injunction and an accounting. After answer and proofs, the case was heard, and on November 11, 1896, a decree was entered dismissing the bill. From such decree the plaintiff appealed to this court. The record discloses that in 1892 the plaintiff sued the defendant in the same court on the same cause of action; that after answer and proofs, and on February 5, 1895, that case passed to a decree dismissing the bill; that subsequently the decree was modified so as to make it one dismissing the bill without prejudice to the plaintiff's right to bring another suit on the same cause of action. This decree of dismissal was so entered because plaintiff had failed to establish the controverted fact of its succession to the business of the firm of P. Lorillard & Co., which firm had been manufacturing and selling the tobacco in the packages described, and of which

firm it claimed to have become the successor in July, 1891. Between the entry of the decree and the modification thereof in the first suit, the defendant changed the form of the label on his package, and has ever since been selling tobacco in packages with the new label, though the fact of this change was not brought to the knowledge of the plaintiff until the taking of testimony in the present case. By agreement between the counsel, the testimony and exhibits used in the prior suit were admitted as evidence in this case, subject to all proper objections.

M. H. Phelps and Paul Bakewell (Philipp, Phelps & Sawyer, on brief), for appellant.

Smith P. Galt, for appellee.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and RINER, District Judge.

BREWER, Circuit Justice, after stating the case as above, delivered the opinion of the court.

It is contended by the defendant that, inasmuch as before the beginning of this suit he had abandoned the use of the label which in the former case was claimed to be a deceptive imitation of the plaintiff's label, the inquiry must be limited to the question whether the package and label which he now uses are deceptive imitations, and that, therefore, substantially all the testimony used in the prior cause is irrelevant to the present controversy. Equity, it is said, cannot be invoked merely to award compensation for wrongs that have been done, and that, as the use of the former label had been abandoned months before the commencement of this suit, even if its use was a wrong to the plaintiff, and wrought injury, the only remedy therefor was an action at law to recover damages. On the other hand, it is contended by the plaintiff that the change in the label was in an unimportant feature, and that the one now used is substantially the same that had been used, so that it is a continuous injury which defendant has been doing and threatens to persist in. No findings were made by the circuit court, no opinion filed, and simply a formal decree of dismissal entered; so we are not advised as to the grounds upon which the court acted. It is undoubtedly true that, where the relief asked is simply an account of profits and damages, equity has no jurisdiction, and the remedy must be sought at law. Root v. Railway Co., 105 U. S. 189; Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556. But in such case the proper decree would be a dismissal without prejudice to an action at law. Here the decree was absolute, and upon the merits; so it is not an unreasonable inference that the court found, not simply that the defendant had abandoned the use of the prior label, but that its use gave plaintiff no legal ground of complaint. We think, therefore, that we are called upon to inquire whether defendant's package, with either the earlier or the later label, was in itself a deceptive imitation of plaintiff's package and label, or so used as to create that unfair and illegal competition which the law denounces, and for which it affords compensation. If the earlier label was not an unfair imitation, the later certainly was not. The change was in the direction of difference, and not in that of resemblance. So we shall address our inquiry to the former. That there are some matters of resemblance is obvious, and it is equally obvious that there are essential and marked differences, and the inquiry in these cases is not fully an-

swered by calling attention to either the several matters of resemblance or those of difference. The question is whether, taking the defendant's package and label as a whole, it so far copies or resembles the plaintiff's package and label that a person of ordinary intelligence would be misled into buying the one, supposing that he was buying the other. And in such a case, as said by Lord Russell in Liebig's Extract of Meat Co. v. Chemists' Co-operative Soc., decided by the British court of appeals November 20, 1896, and reported in the Reports of Patent Design and Trade-Mark Cases (volume 13, pp. 736, 738), "one must be guided very largely by the judgment one forms from the use of one's own eyesight." Elaborate descriptions of the points of resemblance or those of difference are, taken by themselves alone, always unsatisfactory. The eye, at a glance, takes in the whole of one exhibit and the whole of another; and the comparison thus made of the two is the surest, and the only satisfactory, way of satisfying the judgment as to the existence of the alleged deceptive imitation. Here are the two labels, omitting the coloring:

Now, whatever minor points of resemblance may be pointed out between these two labels, it seems to us that the differences are so pronounced that there is no reasonable ground to apprehend that any man of ordinary intelligence would be misled. The two principal ways by which an article is distinguished in trade are—First, the name of the manufacturer; second, the descriptive name. It is said that the plaintiff had acquired a reputation which attached to all of its manufactures, and that Lorillard's tobacco, particularly in the district where the competition arose between plaintiff and defendant, was generally known, and known as a superior article. Concede this, and it appears in the most marked way upon the defendant's label that it is not Lorillard's tobacco that he is selling. The name "Pepers" is in the largest letters, and the most conspicuous place. No one who was looking for Lorillard's tobacco could for a moment be deceived into the belief that this was that tobacco. There is no similarity between the names. Neither the number of syllables nor the number of letters are the same, and there is only one letter in the two names alike. The other principal mode of identification is the name under which the article passes, and here the difference between the two names (though perhaps not so pronounced) is still marked and obvious. "Tuberose" and "True Smoke," when spoken, do not sound alike, do not suggest the same idea; and while, considering the number of letters, and the letters themselves, there is more of similarity than between the names of the manufacturers, yet the contrast between the two is apparent at a glance. So that in the two important features—those by which a purchaser identifies that which he wishes to purchase—the differences are so radical and obvious that it is difficult to perceive how any one could be misled. Beyond these significant matters it may be noticed that the plaintiff's label is a narrow one, 1½ inches in width, circling around the center of the package; the defendant's, a broad one, 2⅜ inches wide, and covering nearly the whole length of the package. While in each the letters composing the name of the manufacturer diminish in size from the first to the last, and those of the article in like manner increase, yet the rapidity of diminution and increase is quite different. The letters in each are colored, but the coloring is not applied in the same way; and, so far as color is a noticeable feature, the mode in which it is distributed operates clearly to distinguish them. Thus, in "Lorillard" the "L" is red, while the succeeding letters are blue, the entire word being shaded with gilt; and the letters are what is known among printers as "plain." On the other hand, "Pepers" is of thin red letters, tipped with blue, and having a penciled blue line around each, giving it the appearance of a block letter. "Tuberose" is in red letters, the top of each being tipped part way in blue, while the letters of "True Smoke" are blue, shaded with gold, and having a red penciled line around each, making, as in the case of "Pepers," block letters. So far as regards the packages, while each is cylindrical, and each holds a quarter of a pound, such packages are in common use, and put out by many manufacturers. It is urged that they are both made of blue and white striped cloth, with the stripes running vertically on the package. But in the plaintiff's package the stripes are broad, each being about

a quarter of an inch in width, while in the defendant's they are not over one-sixteenth of an inch. So that on the plaintiff's package there are only 15 colored stripes, while on the defendant's there are 50. The difference is such that the eye will take it in at a moment's glance. Summing it all up, while there are certain minor points of resemblance which have been forcibly urged upon our attention by the counsel for plaintiff, yet, looking at the two packages with their labels,—taking the tout ensemble,—it appears to us clear that they are so essentially different that no one of ordinary intelligence, desiring to buy the one kind of tobacco, would be misled into buying a package of the other. We shall not stop to review the testimony which is offered upon the question whether the resemblances between the two packages and labels were calculated to mislead, or whether in fact they did operate to mislead. It is enough to say that there was testimony on both sides of these questions, and perhaps, looking at the matter of testimony alone, it might be difficult to say on which was the preponderance; but such testimony, giving it all the weight that it is entitled to, does not disturb the conclusions which we have reached from an inspection of the packages and labels themselves. We cannot surrender our own judgment in this matter because others may be of a different opinion, or because it happens, in isolated instances, that some purchaser was so careless as not to detect the differences. It may well be that, where many sales were made, some individuals, not particularly attentive, may have purchased the defendant's, supposing they were purchasing the plaintiff's, package. Such things will happen in the ordinary course of business, no matter how great the differences; and the fact that they do happen, while it is not to be ignored, is not to outweigh the evidence which comes from a personal inspection of the packages and labels.

Passing beyond that which appeals to the eye, the plaintiff calls our attention to testimony which discloses, as it insists, the following facts: That it had introduced this tobacco among the Scandinavians of the Northwest, to whom it was very acceptable, and among whom it had acquired a large sale; that the defendant at first went into that field selling a tobacco called "Navy Clippings," put up in sacks of white cloth, rectangular rather than cylindrical in form, and containing each a quarter of a pound; that this tobacco did not commend itself, and the defendant was unable to do much business among those people; that he was advised by his agents that plaintiff's tobacco was very popular, that it would be well for him to make a package similar in form and design, and that then he might hope for more success; that thereupon, for the purpose of misleading, he adopted the package and label in controversy; and that since then he has been enabled to do a large business among those people, while the plaintiff's sales have in consequence greatly diminished. This, it is insisted, shows that in fact the defendant's package and label were mere deceptive imitations of the plaintiff's, designed as such, and successful as such, and that, therefore, there is presented a case of unfair competition, entitling the plaintiff to relief. There is some foundation in the testimony for this contention, and it is that which relieves the plaintiff from the unpleasant criticism of having instituted wanton and reckless litiga-

tion. We are not astonished at the action of the Trade-Mark Association, to which the plaintiff belongs, and which is carrying the burden of this litigation,—conduct which defendant's counsel animadverted upon quite severely in his argument. When plaintiff first presented its case to the association, its executive committee, on a mere comparison of the packages and labels, advised that there was no such resemblance as justified an appeal to the courts, or the assumption by the association of the expense of the litigation; but afterwards the committee's attention was called, not merely to the points of resemblance between the respective packages and labels, but also to certain affidavits as to the matters above referred to, and thereupon it reversed its ruling, and held that the suit ought to be prosecuted, and that the association should assume the burden and expense. Counsel urged that this change of ruling was owing to the personal appeals of the representatives of the plaintiff; that it was a mere matter of favoritism to one of the principal members of the association,—and contended that it was evidence of a design on the part of the principal manufacturers of tobacco to act together as one, and by vexatious and expensive litigation crush out all competition by small manufacturers. If the object of the association was as contended, and if the evidence satisfied us that this assumption of the burden and expense was simply a matter of favoritism, and in execution of such a purpose, we should indorse fully his language of denunciation. But, from our examination of the testimony, we are constrained to say that it cannot be held that the executive committee of that association, hearing but the one side, acted wantonly, and with the single view of driving defendant out of the market. On the contrary, the testimony presented by the plaintiff would suggest to reasonable and fair-minded men the propriety of an investigation. And yet, while we say this, we are of the opinion that the testimony, as a whole, does not fully sustain the contention of the plaintiff, or warrant the conclusion which it draws therefrom. It is true that the plaintiff was doing a prosperous business among the Scandinavians of the Northwest, and that the defendant, when it sought to introduce its "Navy Clippings," did not make a success. It is true that one of his agents did write, suggesting an imitation of plaintiff's package. It is true that thereafter defendant put out this package, that his sales increased, and that plaintiff's decreased. And these things, of course, suggest that deceptive imitation which is unfair competition. But, as against this, it must be noticed that the form of the package and the colored stripes were not new in defendant's business; so in these respects he was not simply imitating the plaintiff. Both the form and color of the stripes were in frequent use among manufacturers, and the plaintiff had no special rights in respect to either. It has doubtless been found by experience that a cylindrical package is more convenient for slipping into and taking out of a pocket, and therefore they who use tobacco prefer packages in that form. And, as between a white and a striped package, the variety of color appeals to the eye, and, other things being equal, the purchaser is apt to take the latter. But these are matters of convenience and attraction in common use, and which any manufacturer is at liberty to adopt, and in adopting which he tres-

passes not the slightest upon the rights of others. While one of his agents did write to the defendant, suggesting an imitation of plaintiff's package, yet the defendant forbade any such imitation; and, when the agent who had so written saw the defendant's package, he commented in language quite emphatic upon the idea of its presenting any similarity. The diminution in the plaintiff's sales, and the increase of defendant's, are easily accounted for. The defendant sold to dealers at a less price than the plaintiff,—something like six cents a pound to jobbers. It is not strange, therefore, that they preferred to deal in his, rather than the plaintiff's, goods; for, the retail price being the same, on every package the dealer made a trifle more by selling defendant's than plaintiff's. It is not at all improbable (indeed, it is suggested by the testimony) that not infrequently the dealers sought to press defendant's package on the purchaser in lieu of plaintiff's. But a competition which rests on the matter of difference in price is not a competition which the courts can declare unfair, or can restrain. It is a competition which must be met in some other way than by a lawsuit. So, while we are not disposed to question the good faith of the plaintiff in this suit, or of the executive committee of the association in the change of ruling, we think that the testimony as a whole cannot be said to disclose any unfair competition, and nothing more than ordinary and proper business competition between manufacturers and sellers. Our conclusion, therefore, is that there was no error in the decision of the circuit court, and its decree is affirmed.