UNITED STATES TOBACCO CO. v. McGREENERY et al.

(Circuit Court, D. Massachusetts. March 23, 1906.)

No. 209.

1. TRADE-MARKS—INFRINGEMENT—DECEPTION OF BUYERS—EVIDENCE.
    Evidence examined, and held insufficient to show that buyers were deceived by the defendant's use of any feature of the complainant's label on tobacco packages which was peculiar to the complainant and which the defendant has no right to use.

    [Ed. Note.—Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. SAME—FRAUD.
    While fraud alone is not sufficient to entitle the complainant to a decree restraining unfair competition. yet it is a fact to be taken into consideration by the court.

    [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 78-80.]

3. SAME—DECEPTION OF PUBLIC—MEANS.
    A dealer may lawfully seek to enlarge his custom by selling cheaper than a rival packages of tobacco put up in an old form even though they deceive a careless public, but he may not lawfully seek to obtain the rival's custom by deceiving the public through the appropriation of some characteristic of the rival's package which was new in the art, and is the rival's peculiar property.

    [Ed. Note.—For case in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 81, 83. 86.]

Alex P. Browne and Paul R. Blackmur, for complainant.
Edward S. Goulston, for defendants McGreenery and others.
Moody, Burdett, Wardell & Snow, for American Tobacco Co.

LOWELL, Circuit Judge. This is a bill in equity to restrain unfair competition which is alleged to arise from the defendant's imitation of the complainant's paper label or wrapper used to make up packages of cut plug tobacco. The packages are of the same size. The paper is of the same quality and dark red color. The lettering is gilt, and the conspicuous words are printed in much the same type. One large face of the complainant's wrapper (which I shall call the front, though it may be taken indifferently as the front or the back) has printed at its top the words "Central Union," placed one above the other. Near the middle is a conspicuous device, a woman's face

in a half moon, the latter bearing the words "Union Made." Below this device the words "Cut Plug" appear in one line, and at the very bottom of the label in much smaller letters "United Tobacco Co., Richmond, Virginia." The other large face of the package (which I shall call the back) differs from the front, in that it bears at the bottom, instead of the manufacturer's name, the "Allied Printing Trades Council Union Label, Richmond Va.," and has, beside the device, a gilt edged space upon which is pasted the light blue label of the Tobacco Workers' Union. One narrow side of the package is marked "Smoke and Chew," the other carries the statutory notice. The top and bottom are covered with tin foil.

The front of the defendant's package has printed at the top the words "Union Leader" placed one above the other. Near the middle is a conspicuous device, an eagle with outspread wings, resting upon a package of the defendant's tobacco marked "Smoke and Chew." At the bottom of the label are the words "Cut Plug" in one line. The back of the package bears the words "Union Leader" and "Cut Plug" in perpendicular lines, and is admitted to be without resemblance to any part of the complainant's wrapper. One narrow side of the defendant's package is marked "Union Leader," the other carries the statutory notice. Top and bottom are covered with tin foil. Wrappers like those of the complainant in shape, size, tin foil, colored paper, and style of gilt lettering have long been common. The defendant owns several "brands" of this sort which are older than the complainant's. The color of the paper has long been used to designate a mild tobacco. Varied devices, unlike complainant's or defendant's, have been printed upon similar packages. "Cut Plug" merely describes the kind of tobacco inclosed. The phrases "Smoke and Chew" and "Smoking-Chewing" are also old in the art. Gail v. Wackerbarth (C. C.) 28 Fed. 286. That the packages considerably resemble each other is obvious, but most of the resemblance arises from features which have been combined in common use, and to which no one has exclusive right. That any one is deceived by the size, shape, tin foil, or general makeup of the package, or by its paper, lettering, or color, does not help the complainant's case. All these are old separately and in combination. The complainant must show deception arising from some feature of its own, not common to the public. As was said in Coats v. Merrick Thread Co., 149 U. S. 562, 573, 13 Sup. Ct. 966, 970, 37 L. Ed. 847, the purchaser of thread "is chargeable with knowledge of the fact that any manufacturer of six cord thread has a right to use a black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer." "He (the plaintiff) must make out, not that the defendant's are like his by reason of those features which are common to them and other people, but he must make out that the defendant's are like his by reason of something peculiar to him, and by reason of the defendant having adopted some mark, or device, or label, or something of that kind, which distinguishes the plaintiff's from other goods which have, like his, the features common to the trade. Unless the plaintiff can bring his case up to that, he fails."

Payton v. Snelling, 17 R. P. C. 48, 52. "The evidence is very strong that one tin may be mistaken for the other, very likely; but why? Because of the features common to them and common to all." Payton v. Snelling, 17 R. P. C. 628. "The only question you have then to consider is whether the defendants' get-up is so like the plaintiffs' as to be calculated to be mistaken for it. But when, as in this case and in the last, what is called the plaintiffs' get-up consists of two totally different things combined, namely, a get-up common to the trade, and a distinctive feature affixed or added to the common features, then what you have to consider is not whether the defendants' get-up is like the plaintiffs' as regards the common features, but whether that which specially distinguishes the plaintiffs' has been taken by the defendants." Payton v. Ward, 17 R. P. C. 58.

Passing from the features which are "common to all" in the case at bar, we find that the back and one side of the Union Leader package are quite unlike the corresponding parts of the Central Union. The likeness arising from the statutory notice is immaterial. The devices are totally different, and both are conspicuous. From the Union Leader package are wanting the two trade union labels, at least one of which is conspicuous upon the front of the Central Union. If the back of the Central Union package be compared with the front of the Union Leader, the distinction of the two union labels is replaced by that of the manufacturer's name.

Complainant argued altogether upon the word "Union," which is common to both wrappers, and disregarded all other resemblances. But "Union Leader" and "Central Union" do not sound alike or look alike in print, or mean the same thing. The complainant could not acquire an exclusive right to the word "Union" as designating tobacco. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144. "Union" was a common designation of tobacco. Gail v. Wackerbarth (C. C.) 28 Fed. 286. Many brands containing the word "Union" antedate the complainant's, although, so far as has been shown, the word "Union" had never before been printed in gilt letters on a red ground upon the wrapper of a package of "Cut Plug" tobacco.

Of four witnesses called by the complainant to prove deception, Thompson was deceived by the color of the paper and lettering, by the general appearance of the printing, the tin foil, the size of the package and other characteristics old in the art. His evidence does not help the complainant. Erb said that he was deceived by the peculiar red color of the package, and at first could recall no other characteristic. Later he said that he noticed the word "Union," and that he sought a "union made" tobacco. Yet he, a union man, and familiar with the Central Union package and its two trade union labels, did not notice the absence of these labels from the Union Leader package which he was buying. I believe his mistake had like cause with Thompson's. Smith was not very familiar with Central Union tobacco, and said that he was attracted to the Union Leader by the word "Union." Ihrie's testimony I find hard to believe. He testified that for about a month he had sold Union Leader tobacco, more than 100 packages, and largely to those who sought union made

tobacco, without finding out the difference by himself or through his customers. He had smoked several packages. Yet Thompson, Erb, and Smith all discovered their mistake within a few minutes.

Evidence of deception is hard to deal with. Even where serious deception exists, it may be hard to prove. On the other hand, an honest prejudice easily makes deception imaginable where it does not exist. Where deception is plain and the issue concerns, not the fact of deception, but only its precise cause, the difficulty in dealing with the evidence is increased. That Thompson, Erb, and Smith were deceived is plain. They thought they were buying Central Union tobacco while buying Union Leader; but I think the mistake of the two last, like that of Thompson, arose from the color and general appearance of the package, and little, if at all, from the word "Union." I find, therefore, no sufficient evidence that buyers were deceived by the defendant's use of any feature of the complainant's label which was peculiar to the complainant, and which the defendant had no right to use. King v. Gillard, 22 R. P. C. 327; Jamieson v. Jamieson, 15 R. P. C. 169; Lorillard v. Peper, 86 Fed. 956, 30 C. C. A. 496; Continental Tobacco Co. v. Larus & Bro. Co., 133 Fed. 727, 66 C. C. A. 557.

The complainant alleges not only deception, but an actual attempt to deceive. While fraud alone is not sufficient to entitle the complainant to a decree, yet it is a fact to be taken into consideration by the court. There is evidence which would warrant the court in inferring the defendant's fraud, but this evidence is not conclusive. A defendant may lawfully seek to enlarge his custom by selling cheaper than his rivals packages of tobacco put up in an old form; and this, even if the packages thus sold are bought by a careless public in the belief that the tobacco is that of the complainant. A defendant may not lawfully seek to obtain the complainant's custom by deceiving the public through the appropriation of some characteristic of the complainant's package which was new in the art, and is the complainant's peculiar property. The distinction thus expressed must be kept carefully in mind. The former attempt was undoubtedly made by the defendant. The latter is not established. Moreover, even fraud will not entitle complainant to a decree, unless the public has been or will probably be misled by the defendant's wrongful act. Lorillard v. Peper, 86 Fed. 956, 30 C. C. A. 496; Kann & Damond Steel Co. v. Mann, 89 Fed. 706, 32 C. C. A. 324; Postum Cereal Co. v. Amer. Health Food Co., 119 Fed. 848, 56 C. C. A. 360; Centaur Co. v. Marshall, 97 Fed. 785, 38 C. C. A. 413; Payton v. Snelling, 17 R. P. C. 57; G. W. Cole Co. v. Amer. Cement Co., 130 Fed. 703, 65 C. C. A. 105; Schweppes v. Gibbens, 22 R. P. C. 113.

Upon the whole, I find that the defendant has done no more than to seek a part of the complainant's custom by offering a light smoking tobacco, put up in a convenient package of a style indicating the kind of tobacco, and cheaper than the complainant's. Merely to remove the word "Union," though that is all the complainant asks, would not, I think, increase its sales. In view of all the circumstances of the case, the bill will be dismissed, but without costs.

Bill to be dismissed, without costs.