## AMERICAN BREWING CO. v. BIENVILLE BREWERY.

(Circuit Court, S. D. Alabama. August 10, 1906.)

### No. 249.

**1. TRADE-MARKS AND TRADE-NAMES—DESCRIPTIVE WORD.**

The word "Bohemian," placed on bottles of beer, is a descriptive term, indicating a brand of beer in the manufacture of which Bohemian hops are used and cannot be monopolized as a trade-mark by a particular manufacturer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 13. Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

2. SAME—UNFAIR COMPETITION—IMITATION OF LABELS.

   To warrant the granting of an injunction against unfair competition by the imitation of a label, it must either be manifest to the court on an inspection of the two labels that the similarity as a whole is such as would be likely to deceive ordinarily attentive and observing retail purchasers, or there must be proof of actual mistake by purchasers.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 91. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30. C. C. A. 376.]

3. SAME—BEER BOTTLE LABELS—COMPARISON.

   The labels used by the respective parties on bottles of beer compared, and *held* not to show such similarity as a whole as to warrant the granting of a preliminary injunction restraining defendant from using its label on the ground of unfair competition, in the absence of any evidence of actual deception of the public.

In Equity. Suit for infringement of trade-mark and unfair competition. On motion for preliminary injunction.

Hugh K. Wagner and Inge & Armbrecht, for complainant.
Stevens & Lyons, for defendant.

TOULMIN, District Judge. Complainant claims that it has the exclusive right to make and sell beer under the name "Bohemian," as marked by its trade-mark, and that the public has acquiesced in its ownership of its trade-mark and in its exclusive use of the word "Bohemian" as a trade-mark for beer. It avers that the defendant has put up and sold beer in bottles and packages bearing upon them the trade-name "Bohemian" in violation of the complainant's rights, and with an imitation of complainant's trade-mark as shown by the labels on defendant's bottles. In short, complainant claims that the defendant is guilty of an infringement of its technical trade-mark, and also of unfair competition in business by the use of the word "Bohemian," and also by the imitation of the bottle labels of which the complainant makes use.

The first question is whether the complainant's trade-mark is infringed by the label adopted and used by the defendant. (2) Has the defendant been guilty of unfair competition, resulting in confusion of goods, to the injury of the public, or to the invasion of the complainant's legal rights? "A trade-mark is an arbitrary, distinctive name, symbol, or device to indicate or authenticate the origin of the product to which it is attached. An infringement of such trade-mark consists in the use of the genuine upon substituted goods, or of an exact copy or reproduction of the genuine, or in the use of an imitation in which the difference is colorable only, and the resemblance avails to mislead, so that the goods to which the spurious trade-mark is affixed are likely to be mistaken for the genuine product. Unfair competition is distinguishable from the infringement of a trade-mark, in this; that it does not involve the exclusive right of another to the use of the name, symbol, or device. A word may be purely generic or descriptive, and so not capable of becoming an arbitrary trade-mark, and yet there may be unfair use of it which will constitute unfair competition. It may be so used by another unfairly, producing confusion of goods, and so come under the condemnation of unfair trade,

and its use will be enjoined. * * * Whether such confusion has been, or is likely to be, produced by the acts charged is a question of fact, to be resolved either by evidence of actual sales of the one product for the other, of actual mistake of one for the other, of fraudulent palming off of the one for the other, or, on the other hand, failing such evidence, by comparison of the two brands to determine whether the one can be readily mistaken for the other, even by the inattentive and unobserving retail purchaser." Cole Co. v. Am. Cement & Oil Co., 130 Fed. 705, 65 C. C. A. 105; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Galena-Signal Oil Co. v. Fuller (C. C.) 142 Fed. 1002. "To acquire a right to the exclusive use of a name, device, or symbol as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark points distinctly to the origin, manufacture, or ownership of the article on which it is stamped, and is designed to indicate the owner or producer of the commodity and to distinguish it from like articles manufactured by others. If a device, mark, or symbol is adopted or placed upon an article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark." Columbia Mill Co. v. Alcorn, supra; Cole Co. v. Am. Cement & Oil Co., supra; Williams v. Mitchell, 106 Fed. 168, 45 C. C. A. 265; Galena-Signal Oil Co. v. Fuller, supra.

Undisputed evidence in this case shows that the term "Bohemian" is a generic designation of the product, or descriptive term, indicating the character or kind of beer spoken of; that the term "Bohemian," used in reference to beer, indicates beer having the property of "Bohemian" hops in its manufacture; and that many breweries use and have for years used the word "Bohemian" in the bottling and sale of beer to indicate its kind or class. In fact, the registered trade-mark of complainant contains the word "Bohemian," prefixed by the letters "A. B. C.," as one of its "brands." I am of opinion from the evidence now submitted that the term "Bohemian" thus used does not point distinctly to the origin, manufacture, or ownership of the article on which it is stamped and to distinguish it from like articles manufactured by others, but that it is so placed to identify the class or quality of the article, and that it is not capable of becoming a valid trade-mark and cannot be sustained as such. While a descriptive word cannot constitute a technical trade-mark, yet, where an article has come to be known by the descriptive word, one may not use that word to palm off his goods as the goods of another who first adopted it, and by which appellation the goods have come to be known. If he uses the descriptive word, it must be so used as not to deprive another of his rights, or to deceive the public, and the name must be accompanied with such indications that the thing manufactured is the work of the one making it as would unmistakably inform the public of the fact. Williams v. Mitchell, supra.

The great weight of evidence in this case is that the complainant's beer is universally known, called, and sold as "A. B. C." beer, and

that its "Bohemian" brand is known and sometimes called for and sold as "A. B. C. Bohemian," but oftener as "A. B. C." beer. That such is the fact in the state of Alabama and adjoining states in the United States can hardly be questioned in view of the evidence on the subject, and that the same is to some extent true in the island of Cuba is likewise shown. But in a case of an alleged violation of a valid trade-mark the similarity of brands must be such as to mislead ordinary observers in order to justify a restraining injunction. A court of equity will not interfere when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. Columbia Mill Co. v. Alcorn, supra; Howe Scale Co. v. Wyckoff, 198 U. S. 140, 25 Sup. Ct. 609, 49 L. Ed. 972. "It is not necessary to constitute an infringement that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article." Saxlehner v. Eisner & Mendelson Co., 179 U. S. 33, 21 Sup. Ct. 7, 45 L. Ed. 60. Nor is proof of the existence of actual deception of purchasers essential. In the case of a manifest liability to deception there need be no such proof; but where it is not manifest to the court, upon inspection of the label, that the public would be imposed upon by the dress of the article, there should be proof of actual mistake by purchasers. There are no affidavits to this effect by purchasers or proposed purchasers of either beer in question. There are affidavits on the subject by persons in Cuba, where complainant has a considerable trade with its beer. Some of the persons making said affidavits are either dealers in or agents for complainant's beer, and their statements are mostly expressions of opinion, belief, and conclusions of the affiants as to the likelihood of deception and of unfair competition in trade, but none of actual sales of one product for the other, or of actual mistake of one for the other. Failing such evidence, the court must, by comparison of the two brands, determine whether the one can be readily mistaken for the other by the ordinarily attentive and observing retail purchaser. "In determining the question of fraudulent imitation of packages and labels, merely noting points of difference and similarity is not sufficient. The packages must be considered as a whole." P. Lorillard Co. v. Peper, 86 Fed. 956, 30 C. C. A. 496. In the course of its opinion the court said:

"The question is whether, taking the defendant's package and label as a whole, it so far copies or resembles the plaintiff's package and label that a person of ordinary intelligence would be misled into buying the one, supposing that he was buying the other."

The court further said:

"The two principal ways by which an article is distinguished in trade are, first, the name of the manufacturer; second, the descriptive name."

By comparison, we find the characteristic trade-marks and labels of the respective parties to this suit to be as follows: The essential features of the complainant's trade-mark, as declared in its statement, are:

"The pictorial representation of a globe and an American eagle perched thereon, holding with one talon the United States flag and holding in its beak a pennant or streamer bearing the letters and punctuation marks A. B. C."

On the defendant's label there is no representation of a globe. The American eagle thereon is much smaller and of a different color than that of the complainant's. The United States flag is in a different position, is larger, of a brighter coloring, and more conspicuous, and it is not held in the talon of the eagle. There is a wreath of leaves in its beak, instead of a pennant or streamer, and there is an entire absence of the letters and punctuation marks "A. B. C." which prominently appear on the label of the complainant above the word "Bohemian," and which letters are declared to be essential features of its trade-mark. The word "Bohemian" appears on both labels. It is not mentioned in the description of complainant's trade-mark as one of the essential features of it, but on the defendant's label it seems to be the prominent word. It is of larger type and light blue in color, while on the complainant's it occupies a secondary position with regard to the letters "A. B. C.," is smaller type and white in color, with very small pale blue outlines. The labels are about the same size and shape. Both labels have the names of the respective breweries in large red letters, and the names of their location—the complainant's in prominent red letters and the defendant's in black letters. Are the labels apt to be mistaken by purchasers? There are some minor points of resemblance. Each has an eagle and the United States flag, but of different size and color, and in different position. Each has the word "Bohemian," but different in size of type and color. But we should look at the matter as a whole—both at the resemblances and differences—to ascertain whether, in view of the differences, the resemblances are so marked that the ordinary purchaser would be likely to be deceived or misled. Lorillard v. Peper, supra; Galena-Signal Oil Co. v. Fuller, supra; Lamont Corliss Co. v. Hershey (C. C.) 140 Fed. 763. The court in Lorillard v. Peper said:

"The court must use its own judgment as to similarity of packages and labels, and the fact that others may differ with it in opinion, or that a few isolated purchasers have been misled, does not necessarily bind it."

In the case at bar we find on their respective labels the names of the manufacturers distinctly and prominently appearing, and also the descriptive name of the beer manufactured by each—on the one "A. B. C. Bohemian," on the other "Bohemian," on the one "Saint Louis" in large red letters at the top of the label, on the other "Mobile, Ala." at the bottom of the label. Other distinguishing characteristics have already been shown, and, as before suggested, there is no proof that any purchasers have actually been misled. The infringement of the complainant's trade-mark, as charged, must be clearly shown; and the charge that the defendant is guilty of unfair competition, resulting in confusion of goods, to the injury of the public and to the invasion of complainant's rights, must be satisfactorily proved.

By inspection and comparison of said trade-mark and of the respective labels, as exhibited on the beer bottles of the respective parties, I am unable to find such a degree of resemblance between them as would, in my opinion, be likely to deceive or mislead the ordinary purchaser buying with reasonable care. My opinion is that such infringement has not been shown; and I am not convinced that the claim

of unfair competition is sufficiently established by the ex parte proofs, submitted on this hearing, to warrant the granting of a preliminary injunction.

The motion, therefore, is denied.