## AMERICAN TOBACCO CO. v. GLOBE TOBACCO CO.

(Circuit Court, E. D. Michigan, S. D. December 2, 1911.)

No. 4,002.

1. TRADE-MARKS AND TRADE-NAMES (§ 3*)—WORDS SUBJECTS OF TRADE-MARK—"UNION."

The word "Union" cannot be exclusively appropriated as a trade-mark for tobacco packages.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 61*)—INFRINGEMENT.

The name "Union Leader" as a trade-mark for tobacco packages is not infringed by the name "Union World."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 76; Dec. Dig. § 61.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION OF PACKAGES.

Equity will not interfere as between manufacturers of goods put up in similar packages, where ordinary attention by the purchaser would enable him to distinguish between the goods of the respective parties.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see notes to Schuerer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION OF PACKAGES.

A defendant held not chargeable with unfair competition by the use of packages for tobacco similar to those of complainant where the principal similarity was in the use of a red color and the words "Union" and "Leader," to none of which complainant had an exclusive right, and especially where complainant placed a distinctive highly colored red, white, and blue band around its packages, which was not used by defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Suit by the American Tobacco Company against the Globe Tobacco Company. On final hearing. Decree for defendant.

Reed & Rogers, for complainant.

Frank H. Watson and Charles Hamper, for defendant.

ANGELL, District Judge. This is a bill to restrain an infringement of a trade-mark and unfair competition.

Complainant puts out a brand of tobacco known as "Union Leader Cut Plug." It uses a paper package, wrapped in tinfoil, to contain 1⅔ ounces, a cloth bag or pouch to contain 3 ounces, a tin box to

---

contain 8 ounces, a canister to contain 16 ounces; also a still larger tin box, shaped like a lunch box, with a handle over the top. Each of these packages is colored red in some shade, the foil package being the darkest, and, perhaps, properly described as maroon. The words and symbols used on the face of each form of package are substantially the same, and are as follows: At the top the words "Union Leader," at the bottom "Cut Plug." Between these phrases is a representation of a square parcel of tobacco with an eagle in gilt perched on it. Around the middle of each package, and so placed as to hide in part the representation of the parcel and eagle, is lithographed, or pasted, a red, white, and blue band bearing the words, "Genuine Union Leader Genuine," on the front of the package, and on the back the words, "all genuine Union Leader bears this brand for the Protection of the Public against imitations." The words "Union Leader" and "Cut Plug" are in bright gilt letters, except on the pouch, where black letters are used. None of these packages shows the name of the manufacturer. The thing which first attracts attention in looking at any of these packages at a distance of a few feet, when the packages are upright, is this highly colored red, white, and blue band.

It appears from the evidence that up to five or six years ago the complainant had not used this band, but that, shortly after litigation in which claim was made that its package and label was an infringement of the rights of the owner of the "Central Union" Cut Plug brand, it adopted and has since used this distinguishing band. The defendant beginning early in 1908, and after complainant used its band on the package, put out a cut plug tobacco which it calls "Union World." This is put up in packages containing the same weight of tobacco as those mentioned above, except that it puts out none in the "lunch box" package. The color of its package is red. The red used on the larger packages is distinctly less bright than that used by complainant. There is not much difference in the color of the foil packages—the smallest and cheapest. The lettering is in gilt, but differs decidedly in size and appearance from that used by complainant. The words on the smallest package are "The Labor Leader" at the top, always in quotation marks, and in type so small as to be hardly visible a few feet away; below them in large type in relief "Union"; at the bottom, likewise in relief, "World." Between "Union" and "World" is a representation in gilt, on the maroon background, of an arm bent with a hammer in the hand surrounded by a portion of a spherical projection of the world. At the top of this representation is the word "trade" and at the bottom "mark." This representation appears upon each of the packages except the box containing eight ounces, and except that box each package shows near the top on the front the words, in quotation marks, "The Labor Leader," and somewhere the words, "Not made by a trust." The pouch and the canister show the name of the manufacturer.

Complainant claims that the words "Union Leader" constitute a trade-mark; that this trade-mark is infringed by the words "The Labor Leader," "Union World"; that it has acquired an exclusive right to use the words "Union" and "Leader" on tobacco packages of the

general type of those it puts out, because, due to energy and the expenditure of great sums of money, all over the country the words and the packages have come to indicate the origin of the goods; that defendant's packages, due to their dress and labeling, constitute an infringement of its exclusive rights, and that defendant's conduct is wrongful. The general claims of the complainant may be considered in the order stated.

[1] The word "Union" is common to every one in the tobacco trade. To this word it has been distinctly held, in favor of this complainant, there can be no exclusive right. U. S. Tobacco Co. v. McGreenery (C. C.) 144 Fed. 531, affirmed 144 Fed. 1022, 74 C. C. A. 682. The defendant and its predecessors in title have for many years used the word "Leader" upon tobacco manufactured by it and them, and one of its predecessors copyrighted the word, whether lawfully or not, more than 30 years ago. That its use has been mainly on chewing tobacco is not important. Layton Co. v. Church Co., 182 Fed. 39, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274, and cases cited. As against defendant, complainant cannot successfully contend that it has acquired a trade-mark in the word "Leader."

[2] The words "Union World" are so different in sound and meaning from the words "Union Leader" that, as words and irrespective of the get-up on which they are used, I think they could not be held to infringe the latter, even if the latter were held to be entitled to protection as a trade-mark.

What appears to be the principal contention of complainant remains to be considered.

It is insisted that the use on three of the packages of the words in quotation marks "The Labor Leader," above the word "Union," and at some distance from the word "World," amounts to an infringement of trade-mark and a wrong to complainant in view of the general likeness of the size and color of the packages, and of the way in which, and the extent to which, the complainant has advertised its goods. There are some resemblances in the packages, but most of them arise "from features which have been combined in common use and to which no one has exclusive right. That any one is deceived by the size, shape, tinfoil, or general make-up·of the package, or by its paper, lettering, or color, does not help the complainant's case. All these are old separately and in combination. The complainant must show deception arising from some features of its own not common to the public." Lowell, J., in U. S. Tobacco Co. v. McGreenery (C. C.) 144 Fed. 532, affirmed 144 Fed. 1022, 74 C. C. A. 682. In that case the maker of "Central Union" Cut Plug sought to enjoin this complainant from putting out "Union Leader" without the tricolored band above mentioned. Injunction was denied. The Central Union package is in evidence here. The Union Leader package without the band in my judgment is more easily mistaken for the Central Union than for the Union World. Complainant has no exclusive right to the red color, nor to the size and shape of the packages, nor to the use of gilt letters on them. These things are undeniably open to the trade.

The controlling question in the case is this: Has the complainant

any just ground of complaint because of the use by defendant on its package of the words "Leader" and "Union" as they appear?

[3] The rule is settled that "equity will not interfere where ordinary attention by the purchaser would enable him to discriminate" between the goods put out by the parties, and that one is not bound to prevent a purchase by a careless purchaser. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Columbia Co. v. Alcorn, 150 U. S. 467, 14 Sup. Ct. 151, 37 L. Ed. 1144; Lorillard Co. v. Peper, 86 Fed. 956, 30 C. C. A. 496; Continental Co. v. Larus, 133 Fed. 729, 66 C. C. A. 557; Regensburg v. Portuondo Co. (C. C.) 136 Fed. 869; Am. Brew'y Co. v. Bienville Co. (C. C.) 153 Fed. 615; Jamison Co. v. Jamison, 15 R. P. C. 189; Fels v. Hedley Co., Ltd., 21 R. P. C. 91; King & Co., Ltd., v. Gillard & Co., Ltd., 22 R. P. C. 327.

[4] With the tricolored band in use, it is hard to see how a person, even illiterate, who cared at all what goods he got, could be deceived into taking defendant's goods for complainant's. The testimony as to deception in the record, if admissible, only goes to show that careless purchasers have probably been deceived, not that purchasers who took enough interest in their purchases to look at the packages before pocketing them were deceived. The defendant puts on its package nothing remotely resembling the distinguishing band used by complainant.

It is urged by complainant that the court ought not to regard this tricolored band. But it had been used by complainant after the decision of the McGreenery Case for some time before defendant began putting out "Union World," and there seems to be no just reason for overlooking it in the make-up of complainant's goods. But, if it were disregarded, I am not prepared to hold that a person exercising ordinary care in buying would be deceived by the packages. As above stated, he would in my opinion be less likely to be misled than by the likeness of the packages involved in the McGreenery Case. The testimony for complainant indicates that the ground of mistake would be the red package, and the use of the word "Union." Clearly the defendant cannot be forbidden to use a red wrapper with the word "Union" on it. In the present case, that word on the smaller packages is printed in distinctly different type from the word on complainant's package, and is above a symbol wholly unlike that on complainant's package.

But, whatever the proper conclusion, if defendant had put out its goods before complainant used the band, it is to my mind clear that, when it did put them out with nothing like the band on the package, it did no wrong to complainant.

Having reached this conclusion, it is unnecessary to consider some of the other matters discussed by counsel with much learning and thoroughness.

Decree must be entered for defendant.