JERÓNIMO FONALLEDAS, Plaintiff and Apppellant, *v.* LAS MONJAS DAIRY CORP. ET AL., Defendants and appellees.

No. 8568. Argued June 3, 1943.—Decided February 10, 1944.

*Hugh R. Francis* for appellant. *Cayetano Coll Cuchí* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is an appeal from a judgment dissolving a preliminary injunction and refusing the perpetual injunction sought by the plaintiff to protect the trade-mark which we shall describe in the course of this opinion.

 It appears from the evidence that the plaintiff, Jerónimo Fonalledas, is the owner of a certain rural property segregated from another one known as "Estate Las Monjas." Plaintiff's property, like those which have been segregated from said main property, is also known as "Estate Las Monjas." Since the year 1919 he has established his dairy in that farm. About the year 1924, the plaintiff be-

gan to display and has continued to display, on the vehicles used for the transportation of milk, and on the containers thereof, a design representing a portrait of three nuns enclosed in a circle. Under the three nuns there is a legend which reads thus: "Jersey Milk—Grade A," and stamped around the circle, with white letters on a yellow background, there appears this: "Las Tres Monjitas Dairy—Tel. 155 Hato Rey—Lic. No. 8, Río Piedras, P. R." That symbol was registered by the plaintiff with the Executive Secretary of Puerto Rico, as a trademark, on May 10, 1935.

Meanwhile, defendant Jacinto A. Palacios has been engaged in the sale of milk since 1931. He started in business by virtue of a contract which he executed with Ramón Nevárez, owner of another property, also segregated from the same main property of which plaintiff's property also formed part, and which was likewise known as "Estate Las Monjas." In order to carry out his contract to sell the milk produced at the Nevárez' dairy, the defendant made use of a horse cart for the transportation of milk and on the sides of said cart he displayed an inscription which read: "Las Monjas, of J. A. Palacios." When his business picked up, he used a motor vehicle instead of the horse cart, but always used the same inscription on the sides of the vehicle. Afterwards, a corporation was organized with the name of "Las Monjas Dairy Inc.," the other defendant, to engage in the same business, of which J. A. Palacios was named president. Palacios, as well as said corporation, codefendant herein, had been using on the sides of the vehicles for the transportation of milk a design representing a cow and two nuns standing on either side of the animal. The nun to the right of the cow holds in each hand a basket with two bottles of milk. The other nun has a pail in her hand. Above the cow there is written this title: "Las Monjas Dairy Corp.," and at the bottom of the design, between the cow and the nuns, there is written: "Grade A Milk—Pasteurized."

The design displayed on Palacios' vehicles has a legend which reads thus: "Las Monjas Dairy" ("Lechería Las Monjas") and above and underneath the cow, another legend which says: "Fresh and Wholesome Cow's Milk" and under it: "J. A. Palacios." The nuns on plaintiff's and defendant's designs have similar dresses.

Stress should be laid on the point that the plaintiff's transportation vehicles are painted tan and those of defendants are green, so that the symbols of the trade-marks are painted, respectively, on completely different backgrounds. Still of greater importance is the fact, as was properly pointed out by the lower court, that the bottles containing the milk of plaintiff's dairy have the circle with the three nuns, etc., while those used by the defendants have no design whatsoever, except the caps where the following legend appears: "Las Monjas Dairy Corp.—Pasteurized Milk—Santa Ana 12—Tel. 133." It is on their vehicles, we repeat, that the defendants display the design complained of by the plaintiff.

On July 1, 1937, and July 21, 1939 defendant Palacios applied for the registration of the trade-mark used by him, and on both occasions the Executive Secretary refused to register the same on the ground that said trade-mark was so similar to that of Fonalledas that it could mislead the consumer.

In his petition for injunction the plaintiff alleged that defendants' acts, to which we have just referred, constitute unfair competition, causing prejudice to the sale of the milk produced by the dairy "Las Tres Monjitas" and likewise constitute an infringement of plaintiff's trade-mark and tend to mislead or deceive the consumer as to the origin of the article; that if the defendants insist on acting in the manner above described, they will cause irreparable injury to the plaintiff, and, lastly, that the plaintiff has no other remedy at law.

The question to be determined is, conceding that there exist certain points of resemblance between both marks, from a slight inspection of the two, whether, taken together, they appear so essentially different that a person of ordinary intelligence and exercising care, who desires to purchase the one kind, should not mistake one for the other. It is not extraordinary that in isolated instances, some purchaser was so careless as not to detect the differences, for as was stated by Judge Brewer in *Lorillard* v. *Peper* (C.C.A.) 86 F. 956, 960: "Such things will happen in the ordinary course of business, no matter how great the differences; and the fact that they do happen, while it is to be ignored, is not to outweigh the evidence which comes from a personal inspection of the packages and labels."

In the case at bar the plaintiff has not prayed that defendants be restrained from the use of the names "Las Monjas" or "Las Monjas Dairy Inc." As the trial judge says, his objection is against the use of the symbol representing two nuns or any nun whatsoever, in connection with his business. Therefore, we shall fix our attention on the designs of both marks. Disregarding said titles, any housekeeper who desires to buy a bottle of milk from plaintiff's dairy will notice, on receiving the same, the design of the three nuns on the bottle. However, if she desires a bottle of milk from "Las Tres Monjitas" and instead gets one from the defendants, without any effort at all, she will notice that the bottle has no design whatsoever and will realize immediately that she did not receive the kind she desired. One must consider that this is not a case dealing with chewing gum, for example, which is often hurriedly purchased in small packages and consumed before the deception is discovered, as is pointed out in *American Auto Asso.* v. *American Auto Owner's Asso.* (Cal. 1932) 83 A.L.R. 699, 705. Milk is not a product consumed so hurriedly. It is usually received once a day at the consumer's home and

is kept in the refrigerator. Therefore there is ample opportunity for a person of ordinary intelligence and who is not particularly inattentive to discover the deception. Disregarding the possibility of committing any error in so far as the bottles are concerned, we shall now determine whether the designs appearing on the sides of defendants' vehicles are misleading.

We have already stated that the vehicles which carry the milk of "Las Tres Monjitas" are painted tan, while those belonging to the defendants are painted green. And according to the carefully written opinion of the lower court, the consumer of milk does not pay great attention to the vehicle of transportation, which vehicle he does not usually see, and if to this we add that the bottles used by the defendants offer no opportunity for deception, we do not see how there can be the unfair competition complained of by the plaintiff. But discarding this circumstance pointed out by the lower court, for the sake of argument, and limiting ourselves now to the two designs in question, we do not see how a person of ordinary intelligence and exercising care, can be misled. The position of the nuns is different: the ones on plaintiff's mark represent a portrait bust, enclosed in a circle; those of defendants do not have said circle, the nuns are standing, in full length, and carry the baskets for the bottles and the pail to which we have referred, while those of the plaintiff hold nothing in their hands, and, lastly, between the two nuns on defendants' mark there is a cow which does not appear on plaintiff's. It may be said that the only point of resemblance is that in both marks there are nuns. But in *American Auto Asso.* v. *Amer. Auto Owners' Asso., supra,* the following was said:

"Many other cases might be cited to the effect that it is not enough to entitle a complainant to relief that some purchasers might be influenced to accept a competitor's product when his was desired because the competitor's product bore upon the container some figure

or words in common with his own, if the differences in other respects are such as to make them readily distinguishable by an ordinarily observant purchaser; nor is it a ground of action that deception was due to resemblance in features as to which the complainant had no exclusive right. *Wunderlich* v. *Cash* (C.C.A.) 33 F. (2d) 118.''

The cases of *Eneglotaria Medicine Co.* v. *Sosa López*, 38 P.R.R. 542, and of *Jackson Brewing Co.* v. *José B. López, Sucrs.*, 51 P.R.R. 697, cited by the plaintiff, are easily distinguished. In the former there is such a marked resemblance between plaintiff's and defendant's product that if the bottles of said product were placed side by side, it took some attention to make the distinction, for the container used by the defendant was substantially the same size and form as the bottle used by the plaintiff; that the bottles were tipped in almost the same way with a yellow plastic substance easily broken or removed, and there also appeared other points of resemblance between said products, for which reason this court, in rendering judgment for the plaintiff, expressed itself thus:

''As a further inference of fact, and at the risk of repetition, we are convinced that the product of the defendant in its container and with its label, while distinguishable when placed side by side with the label of the complainant, is not sufficiently distinct to prevent the buying public from being deceived into believing that it is buying the product of the complainant when in point of fact it is buying the product of the defendant. A person, of course, who knew either mark very well would not be deceived.''

And in *Jackson Brewing Co.* v. *José B. López, Sucrs., supra,* the discussion was confined to the use of the word ''Jax,'' on the part of the defendant, in the phrase ''Jax Brewing Co.,'' infringing thereby the trade-mark ''Jax'' registered by the Jackson Brewing Co., from Louisiana. It was held that the word ''Jax'' was a nickname and hence not excluded from being made the subject of a valid trademark and as such was entitled to protection.

That the plaintiff has not been prejudiced in his business by the alleged unfair competition and infringement of his trade-mark is evident from his own testimony in the sense that his dairy produces about two thousands quarts of milk daily; that he sells it all and could sell more if he produced more.

The fact that the Executive Secretary on two occasions refused to register the trade-mark of the defendant on the ground that it was so similar to plaintiff's that it might lead to confusion or error, does not bind the courts to adopt the same opinion.

For the reasons stated the judgment appealed from must be affirmed.